FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

FEB 10 2021

JAMES N. HATTEN, Clerk

By: _____ Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
*(Atlanta Division)*

ALTHEA MILEY, et al.,
 P.O. Box 244126
Atlanta, GA 30324

       Plaintiff

v.

DEBORAH J. BURNS, Individually
 As Corporate Executive and Employee of
 TMST HOME MORTGAGE LOANS, INC. f/k/a
 THORNBURG MORTGAGE HOME LOANS,
 INC. as Mortgage Service Provider (MSP)

TMST HOME MORTGAGE LOANS, INC. f/k/a
 THORNBURG MORTGAGE HOME LOANS,
 INC. as Mortgage Service Provider (MSP)

       Defendants.

Case No. **1:21-CV-0616**

## COMPLAINT FOR DAMAGES AND OTHER RELIEF

  This action is brought by Althea Miley ("the Plaintiff") to state a cause of action in fraud for alleged claims of conspiracy to commit mortgage servicing fraud; bankruptcy fraud; foreclosure fraud; deceit, and concealment of a material facts, falsity, and scienter on the part of the wrongdoers pursuant to 18 U.S.C. §157 (3) under Title 11; Georgia RICO statute O.C.G.A. § 16-14-4 (b) and § 16-8-102 (5) through a pattern of securitization mortgage-servicing-fraud racketeering activities including 18 U.S.C. § 1341 and 18 U.S.C. § 1343 conspiracy actions for profit; and violations under the Georgia Residential Mortgage Act, Article 13 § 7-1-1013(6) (GRMA) mortgage servicers' misconduct including misrepresentations, omissions, and sale of homeowners real property to insider for inadequate consideration in abuse of homeowners in

financial distress allegations which extends to the third party mortgage servicers' attorneys as well as the vendors retained to provide loss-mitigation services with respect to the bankruptcy and foreclosure fraud allegations, are jointly, vicariously, and severally liable for Plaintiff's distinct concrete injuries to property and business for equitable relief and punitive damages.

The Plaintiff alleges the purpose of the scheme was to manipulate the Plaintiff into foreclosure via the well publicly documented means of the dual-track process of pursuing foreclosure and loan modification at the same time is alleged to have been perpetrated to strip out the equity from the Plaintiff's property; drive down the value of the property; acquire the property for below market value for the principal Defendant's personal family possession, ownership, and use.

It is important to convey this is not an attempt to invoke investors' rights under a Mortgage Pooling and Service Agreement (PSA) and contract.  Even though it is axiom, a mortgage servicers' first  duty is to the noteholders of the trust, it also axiom, they still owe a duty of good faith and fair dealing to the borrowers whose securitized mortgages backs a trust. It is obligatory for a foreclosing party under a power of sale to exercise that power fairly and in good faith states:

## **INTRODUCTION**

This is the second time this case has come before this Court which was brought in the original jurisdiction of federal courts.  The Plaintiff brought an action on September 2, 2014; a Complaint under O.C.G.A. § 9-3-96 tolling the statute of limitations for foreclosure fraud conducted through the bankruptcy court, asserting two parallel claims:  federal statutory claims and state-law claims.

2

The federal and state claims were derived from common nucleus of operative facts because they arose from the same set of facts determining the rights to certain property.

In *Althea Miley vs. Thornburg Mortgage Home Loans Inc. (TMHL), Deborah J. Burns, Cenlar Inc. et al* Docket No. 14-CV-02819-CC,[1] initially filed on September 2, 2014, an Action at Law for Cancellation of Fraudulent Deeds; Recovery of Property; and Recovery of Damages not Associated with the Property, alleging TMHL and other parties for violated the automatic stay and discovery of fraudulent concealment with deliberate hiding and suppression of mandated material facts with intention to deceive and defraud when Defendants foreclosed on the Plaintiff's property on September 4, 2007; arguing TMHL had no beneficial interest in the subject Security Deed invoking the Power of Sale in its capacity as the assigned beneficial owner on January 23, 2007.

The federal claim was ultimately dismissed, and complete diversity of citizenship was lacking between plaintiff and defendant where the Court determined under the federal claim, the Plaintiff had failed to state a claim upon which relief could be granted; the Judge therefore refused to exercise supplemental jurisdiction over state claims which was dismissed without prejudice.

Under 28 U.S.C. §1367, the Plaintiff transferred, filed in, and notified the DeKalb County Superior Court on November 30, 2015 of the transfer from federal court to the state

---

[1] In an effort to reduce file size, Exhibits integral to the case already on file in the original Northern District of Georgia case *Althea Miley vs. Thornburg Mortgage Home Loans Inc. (TMHL), Deborah J. Burns, Cenlar Inc. et al*, Docket No. 14-CV-02819-CC are referred to and cited using a "DC 1-X." designation. The same Exhibits are attached to State Case No. 15CV12019-8 transferred under 28 U.S.C. §1367. Exhibits added to the renewed case are cited using a "DC 2-X designation."

court, Case No. 15CV12019-8; a Complaint under O.C.G.A. § 9-3-96 tolling the statute of limitations.

The Superior Court failed to recognize the Complaint was transferred from the Federal Court and rejected the tolling of the statute of limitations under O.C.G.A. § 9-3-96; dismissed the case citing statute of limitation under O.C.G.A. § 9-3-33; issuing a Final Order dismissing the complaint as to some of the Defendants.

The final judgment did not conclude all matters actually presented; or considered all allegations in reaching the decision; prevented the Plaintiff from fully presenting case so that no real contest occurred on the extrinsic and collateral fraud; and prevented the complaining party from making a full and fair defense.

The Plaintiff filed several appeals over the continuing case; last being appeal, No. S20C0867 of the dismissal of renewal Case No.18CV2135 to the Supreme Court of Georgia February 14, 2020. The Remittitur of record was filed on August 10, 2020.

The Georgia Supreme Court provided in *Clark v. Newsome*, 180 Ga. 97, 99 (178 SE 386) (1935) whenever any case now or hereafter pending in any of the courts of this State, either at law or in equity, commenced within the time limited by law, shall be discontinued, dismissed, or the plaintiff therein become nonsuited, and the plaintiff's claim may be barred during the pending thereof by any law now in force in this State, the plaintiff may, at any time within six months from such termination of the case, and not after, renew or recommence the same, in any court having jurisdiction thereof in this State.

Newly discovered evidence of fraud and wrongful concealment have since been uncovered which prevented the Plaintiff from discovery of the nature of the claim within the limitations period, despite the past due diligence in pursuing the discoverable fraud in this case.

4

The Plaintiff's newly discovered evidence shows the Defendant engaged in undisclosed activities related to a real estate deal perpetrated through bankruptcy court via fraud, misrepresentation, and concealment pursuant to 18 U.S.C. §157 (3) under Title 11.

As every aspect of a bankruptcy case is governed by federal law except exemptions, the new claims in this case can not be brought in state court because the federal district court has jurisdiction over the bankruptcy claims except for exemptions and only in a federal court can all of the claims be tried together. Therefore, the Plaintiff recommences this case in a federal court.

### Parties

1.      Althea Miley ("the Plaintiff")  P.O. Box 244126, Atlanta, GA 30324 was a resident of Dekalb County who resided at 1525 High Haven Court, Atlanta, Georgia, 30324 and operated home business ONTRACK Healthcare Reimbursement & Recovery Networks, LLC, Entity Control No. 0449673 from said location.

2.      Deborah J. Burns, individually ("the Defendant"), 1031 San Luis Rey Place, NE Albuquerque, NM.  the alleged culpable person, was a Senior Vice President and Secretary of the Santa Fe, New Mexico based corporation TMHL, was at all times relevant hereto, an insider of the corporation as that term is defined in 11 U.S.C. § 101(32)(B) and (E) held the following positions:

        (1)      Senior Vice President: TMHL Structured Finance: business model shows the organization financed loans through warehouse borrowing arrangements, pooled the loans for securitization, sold the loans to third party security trusts which was named after Thornburg Mortgage,  and

        (2)      Secretary: Thornburg Mortgage Home Loans, Inc. n/k/a TMST Mortgage Home Loans, Inc. (TMHL):  business model includes servicing the TMHL Structured Finance

sold pooled mortgages whose day to day operations was serviced through an outsource vendor.[2] TMHL mortgage servicing in Santa Fe, had an internal servicing department which was responsible for managing the delinquent loan portfolio and making all the decisions regarding delinquent loans.[3]

     3.     The alleged operational enterprise having the same, related, or similar purpose consisted of:

     (1)     TMHL, as Mortgage Service Provider: Joel I. Sher, Trustee , Shapiro, Sher Guinot & Sandler 250 W. Pratt Street, Suite 2000 Baltimore, MD 21201; the alleged operation work center, product, vehicle, and device used in the unlawful activity to enable fraud.

     (2)     Cenlar, Inc: 425 Phillips Blvd., Ewing, NJ 08618, a federally chartered savings bank, located in Ewing, NJ, according to public records, provides outsourced third-party mortgage services was commissioned by TMHL to perform the day-to-day operations management in the servicing of their portfolio of mortgages; process foreclosures; and hire the attorneys in connection with the bankruptcy and foreclosure cases permitting the inference of an agreement.[4]

     (3)     McCalla Raymer, LLC (MR): 1544 Old Alabama Road Roswell Rd., Roswell, GA 30076 law firm specializing in bankruptcy and foreclosures retained by Cenlar on behalf of TMHL for legal counsel authorized to carry out certain defined acts within the course

---

[2] Glassman, James K (2004-05-13). "*Pulling out a Thornburg*". National Review Online.
[3] http://www.mortgageorb.com/e107 plugins/content/content.php?content.888     Retrieved 11/4/2015
[4] *Id*

6

and scope of the firm's specialty permitting the inference of an agreement in connection with the foreclosure and bankruptcy cases.

(4)     MR Default Solutions, LLC n/k/a as Prommis Solutions, LLC: 400 Northridge Rd, Atlanta, GA 30350, a loss prevention provider formed in Delaware 2006 by McCalla Raymer[5]; provides outsourced technology enabled foreclosure and bankruptcy processing services to mortgage servicers predominantly through law firms, permitting the inference of an alleged ad hoc agreement was retained by McCalla Raymer, LLC for alleged non-legal processing service for loss mitigation, bankruptcy, foreclosure, and settlement services.

## Jurisdiction and Venue

4.     This court has federal question jurisdiction over alleged violations of the federal laws and regulations pursuant to 18 U.S.C. § 157(3);  18 U.S.C. § 1341 and § 1343 (federal question jurisdiction), 28 U.S.C. § 1367(a), and 28 U.S.C. §1332.

5.     Venue in this Court is proper pursuant Section 28 U.S.C. § 1391(a).

**Plaintiff's Cause of Action in which Additional New Claim Arises**

6.     Plaintiff Althea Miley, in addition to the state claims, alleges pursuant to 18 U.S.C. §157 (3) under Title 11; Georgia RICO statute O.C.G.A. § 16-14-4 (b) and § 16-8-102 (5) through a pattern of securitization mortgage-servicing-fraud racketeering activities including 18 U.S.C. § 1341 and 18 U.S.C. § 1343 conspiracy actions for profit; files a Complaint against Deborah J. Burns, individually ("the Defendant"), the alleged culpable person, a former Senior Vice President corporate executive and employee of TMHL in capacity as mortgage servicer for

---

[5] *Barkley v. Prommis Solutions Holding Corp.* (In re Thorne) Case NO. 09-11763-DWH
    Adv. Proc. NO. 10-1172 (Bankr. N.D. Miss. Apr. 19, 2012)

Thornburg Mortgage Securities Trust 2002-4; asserts and alleges to be the victim of a conspiracy connected with a cases under Title 11 to commit predicate acts including a pattern of deceptive mortgage servicing practices, bankruptcy, and foreclosure fraud; illegal loan servicing money laundering schemes, fraudulent misrepresentation, and fraudulent conveyance of real property for personal gain and use and other various predicate acts which give rise to a civil action, where a victim may sue therefor in any appropriate United States District Court.

7.     Plaintiff Althea Miley alleges Deborah J. Burns, in using TMHL's mortgage servicing capacity: administered the company's work product as the vehicle to commit mortgage servicing fraud; had an independent personal stake in achieving the illegal objective; and conspired directly an indirectly to defraud and disgorge the Plaintiff of real property.

8.     The Plaintiff alleges the Bankruptcy Courts were used as a tool to unjustly oust the Plaintiff from the property to take indirect ownership. The Plaintiff alleges, the operation including sub-servicer Cenlar, functioning as continuing instrumentalities of TMHL, had lawyer-assisted participation in Defendant's closed-ended scheme; a wink-wink associates-in-fact relationship, an improvised or ad hoc specialty arrangement for a particular business purpose, a proxy relationship permitting the inference of an alleged agreement with respect to their line of business, amounting to bootstrapping the separate elements as an operation; aided and abetted the Defendant's unlawful conduct in the Courts and on the Plaintiff as a Debtor under Chapter 13, are jointly, vicariously, and severally liable for Plaintiff's distinct, direct, proximate, and concrete injuries to property and business.

9.     Under Chapter 11 of Title 11 of the United States Bankruptcy Court of Maryland, Case No. 09-17787, TMHL is alleged to have taken advantage of their debtor-in-possession non-requirement to give notice or request a hearing to assume, assign, or sell the

company's assets; sold the Plaintiff's fraudulently obtained property identified in Proof of

Claim No. 0122 as TMHL's estate property under the alleged guise of 11 U.S.C. § 1123(b)(4)

in the ordinary course of business; directly harming Plaintiff's right to claim the property

causing direct and proximate injuries in violations under 18 U.S.C. §157 (3); Georgia RICO

statute O.C.G.A. § 16-14-4 (b); § 16-8-102 (5); and GRMA 13 § 7-1-1013(6) by deceptive and

fraudulent means.

### Allegations Common to All Counts

**Procedural Background**

      10.     On September 30, 2002, the Plaintiff signed a Security Deed and Promissory

Note for $226,200 in favor of lender BancMortgage Financial Corp pertaining to primary

residence located at 1525 High Haven Court, Atlanta, Georgia, 30324 (the "Property"), referred

to in this Complaint as the "Mortgage Loan" in favor of Mortgage Electronic Registration

Systems, Inc., No. 1000040200000110870 as the Lender's nominee to hold beneficiary status as

nominee for BancMortgage Financial Corp., Loan No. 15151102 filed on October 18, 2002 in

the County Clerk's office of DeKalb County, GA in Deed Book 13763, Page 510 at Section 20

which authorized the sale of note and change of loan servicer who collects periodic payments

under the note. *See* (Exhibit DC 1-A).

      11.     Due to a business temporary setback, the Plaintiff, who had always paid on time

contacted the Servicer because for the first time was about to default on the loan; reached out to

seek a workout solution. The Plaintiff alleges she became a target at that time, due to the call,

for a scheme to manipulate the Plaintiff into foreclosure by deception in June 2006.

      12.     On or about June 2006, with the mortgage becoming past due, the Plaintiff

contacted the mortgage servicer to work out a plan. After explaining the current situation to

Elaine Boswick at 609-718-2432 x 3135, a Representative of sub-servicer Cenlar's Loss-Mitigation Department suggested a Mortgage Forbearance Agreement was appropriate where the borrower fell behind in payments due to a temporary setback.

13.     The Representative of Cenlar's Loss-Mitigation Department, alleged to have had superior knowledge of essential facts regarding the loan, made unambiguous and positive assurances, a forbearance plan was feasible.  A Mortgage Forbearance Agreement upon explanation, was a mutually accepted arrangement between borrowers who has defaulted, agrees to a mortgage plan that will bring the borrower current on his or her payments, and a lender agrees not to foreclose upon certain conditions of the plan.

14.     Upon available information and belief, TMHL and sub-servicer Cenlar were credible companies; based on previous experiences found the suggestion to be a good-faith consideration to prevent the filing of a future foreclosure, in reliance agreed to the detriment of Plaintiff, entered into the Mortgage Forbearance Agreement process for consideration as instructed by Ms. Boswick.

15.     The Plaintiff, who had a perfect payment history up to that time, had no reason not to believe the servicer would hesitate to work with such a customer due to their long-standing relationship immediately submitted the requested documents on or about June 17, 2006. Extensive documentation concerning Plaintiff's financial condition and personal condition was supplied by fax as directed to expedite the process, was authenticated by Plaintiff's log as a successfully transmitted to 609 718-4851 Attn: Elaine Boswick , the first month of default.

16.     After a month of no response, on or around July 18, 2006, a follow-up call was placed to Representative Boswick, with whom I had faxed the information; was unavailable

according to person who picked up the overlay calls, advised to leave a message on the voice mail.

17.     Further follow-up from August to September 2006 of calls to Ms. Boswick and being told my application was not on file according to several other Representatives who answered Ms. Boswick's phone; the documents were resubmitted several more times.

**Notice of Sale under Power**

18.     While waiting on the Forbearance Agreement process completion with the Loss-Mitigation Department, the Plaintiff received a letter on or about September 19, 2006, citing an urgent matter to discuss the delinquent loan matter.  Shocked and horrified, Plaintiff immediately contacted Defendant TMHL/Cenlar's Loss-Mitigation Department to notify them that a Forbearance Agreement was in process. A Representative named LeAnn offered little explanation, except the filing of the Default Notice was intimate was now a deal changer; the foreclosure attorney fees which were excessive would now be required to bring account current, an additional amount near the mortgage default total.

19.     October 05, 2006 by certified mail, a Notice of Default from McCalla Raymer to initiate a non-judicial foreclosure was received.

20.     The Plaintiff has since come to learn nearly all securitized loans restrict modifications to loans that are in default or where default is imminent or reasonably foreseeable. This restriction protects the REMIC's pass-through tax status and off-balance-sheet accounting treatment,[6] where only certain types of modifications are permitted, such as interest-rate reductions, which the Plaintiff had received with no problems in 2005.

---

[6] *See* I.R.C. §§ 860A-860G (2006) (discussing REMIC treatment)

11

21.     Evidence shows Cenlar, not TMHL whose tax ID is 85-0465215, filed the 1099-Acquisition of Secured Property under their Federal Tax Identification No. 21-0534340 to the Internal Revenue Service (IRS) on January 26, 2008, to inform the IRS of Cenlar's acquisition of said property not TMHL on September 4, 2007 for an outstanding balance of $226,113.31, with a fair market value of $261 .879.50 is alleged done so to protects the TMHL's REMIC's pass-through tax status, showing approximately $35,766.19 in equity.

22.     Mortgage Services Researchers Levitan and Towney [7] report, a servicer's decision of whether to foreclose or modify a loan is more likely to make their decision based on their own cost, income structure, and their own economic interests; is skewed toward foreclosure.  The Plaintiff alleges here is where the bait came into play.

23.     A Notice of Sale under Power with a pending sale scheduled the first Tuesday, November 2006 for foreclosure purposes was published in the DeKalb County Champion legal organ.  *See* (Exhibit DC 1-B).  The initial Notice dated October 12, 2006 was  published until November 2, 2006 stated:

> "Under the Power of Sale contained in the Security Deed given by Althea Miley to ***Mortgage Electronic Registration Systems, Inc.,*** dated September 30, 2002, recorded in Deed Book 13763, Page 510, DeKalb County, GA records ***as transferred to Thornburg Mortgage Home Loans Inc. by Assignment*** to be recorded in the Office of the Clerk of Superior Court of DeKalb County, Georgia Records, conveying the after described property to secure a Note in the original principal amount."

noticeably, did not provide contact information.

---

[7]  The Plaintiff draws mortgage servicing operational factual recitations referenced and quoted herein from:

1. Georgetown Public Law and Legal Theory Research Paper No. 11-09 on *Mortgage Servicing* written by Adam J. Levitin of Georgetown University Law Center and Tara Twomey of National Consumer Law Center retrieved from http://scholarship.law.georgetown.edu/facpub/498

2. Law Insider Dictionary and Contract Database retrieved from https://www.lawinsider.com

24.    For comparison and contrast, *see* ( Exhibit DC 2-A), a copy of a Notice of

Default for a mortgage loan in pool "Thornburg Mortgage Securities Trust 2002-4 Mortgage

Pass-Through Certificates (similar securities) which the Plaintiff's mortgage was a part of; was

of the same coupon, security type, and mortgage collateral was published by Select Portfolio

Servicing, Inc., the successful Chapter 11 bidder of TMHL's Servicing Portfolio as:

> "NOTICE OF SALE UNDER POWER GEORGIA,                        By
> virtue of a Power of Sale contained in that certain Security Deed from
>                        to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
> INC. AS NOMINEE FOR BANCMORTGAGE FINANCIAL CORP., dated July 25, 2002,
> recorded August 9, 2002, in Deed Book        Page        ,        County, Georgia
> Records, said Security Deed having been given to secure a Note of even date in the
> original principal amount of Four Hundred Fifty-Two Thousand and 00/100 dollars
> ($452,000.00), with interest thereon as provided for therein, ***said Security Deed having
> been last sold, assigned, and transferred to Deutsche Bank National Trust Company,
> as Trustee, on behalf of the holders of the Thornburg Mortgage Securities Trust 2002-4
> Mortgage Pass-Through Certificates, Series 2002-4***, there will be sold at public outcry
> to the highest bidder for cash at the        County Courthouse, within the legal hours
> of sale on the first Tuesday in March 2020, all property described in said Security
> Deed including but not limited to the following described property."

25.    Plaintiff specifically avers and therefore alleges, this publication supports

Plaintiffs claim TMHL was the mortgage servicer only and had no beneficial interest in the

subject Security Deed or the Promissory Note when TMHL foreclosed on Plaintiff's property as

the entity TMHL invoking the Power of Sale in its capacity as the assigned beneficial owner on

January 23, 2007 under the subject Promissory Note; was not the holder in due course when it

fraudulently as alleged, foreclosed on consumer loan 0012352381, September 4, 2007, rises

above speculation as to the true beneficial owner.

**Plaintiff as Debtor under Chapter 13 Bankruptcy Filings**

26.    In  a desperate attempt to save the home and home business, a Chapter 13

bankruptcy was the only avenue available at  the time to avoid foreclosure and remain in home

was filed pursuant to § 1322(b)(5, which provides that a debtor may "cure" a default on or about

November 4, 2006, Petition No. 06-74027.

      27.     The servicer retained a bankruptcy attorney to assist in the bankruptcy legal

process. The agent/law firm MR failed to file a proof of claim to satisfy the requirements of

Bankruptcy Rule 3001(c)(1); to include evidence of security interest perfection; or as required

per Bankruptcy Rule  9011 a true copy of the original Note attached to the proof of claim; or an

itemization of fees with proofs of claims, and no identifying the party to contact for notice

purposes.  Rule 3001(c) (1) Proof of Claim Supporting Information states:

> *Claim Based on a Writing*. Except for a claim governed by paragraph (3)
> of this subdivision, when a claim, or an interest in property of the debtor
> securing the claim, is based on a writing, a copy of the writing shall be
> filed with the proof of claim. If the writing has been lost or destroyed, a
> statement of the circumstances of the loss or destruction shall be filed
> with the claim; and

Bankruptcy Rule 9011(b) provides:

> All documents within its scope require the lawyer's certification of proper
> purpose, warranted by law or a non-frivolous argument for extension or
> reversal of the law, and evidentiary factual support.

      28.     Without instructions, Plaintiff paid the scheduled amount to Court and forwarded

current mortgage due payable to TMHL as customary December 2006. The checks were not

cashed over 3 months, whether endorsed to TMHL, Cenlar, or MERS, as per the varying

information gleaned from the foreclosing attorney's filings for relief from the automatic stay.

      29.     The Plaintiff alleges, although the right to cure defaults on loans has been part of

the Bankruptcy Code since 1978, the  mortgage servicer was simply unwilling to conform its

accounting practices to what is required under the Bankruptcy Code; was deemed not cost

effective; and an administrative burden as opposed to a foreclosure action where a creditor with

a secured security interest claim allowed the lender to recover the property, sell it at auction, and

apply the proceeds to the account balance.   The servicer rejected the debtor's ongoing mortgage payments for 3 months.

30.    On or about February 02, 2007, a Motion for Relief from Stay filed by Michael J. McCormick of MR Law Offices, identified *MERS as nominee for Cenlar, FSB* (their client) instead of nominee for Thornburg Mortgage Home Loans Inc.by Assignment, contrary to the fraudulent stated Lender in the Notice of Default published in the Champion Legal Section, pages for four (4) weeks stated:

> "Movant is the *holder of record of a Security instrument* which describes certain real property in which Debtor claims an interest. Said real property is security for a promissory note held by Movant."

> "Debtor has defaulted in making payments which have come due since this case was filed. Through the month of February 2007, three (3) payments have been missed. The unpaid principal balance is $226,113.31, and interest is due thereon in accordance with the Note. Because of the Debtor's default and clear inability to make all required payments, Movant is not adequately protected and shows that there is cause for relief from the automatic stay. Because the Security Instrument so provides, Debtor is responsible for Movant's reasonable attorney's fees." *See* (Exhibit DC 2-B).

31.    The case was dismissed primarily because Plaintiff could not show payment to Lender prior to confirmation on February 15, 2007 before the scheduled hearing on March 7, 2006.  The Trustees Final Report filed on March 15, 2007 shows the creditor as Cenlar despite the Petitioner's filed schedule stating TMHL as the entity for the mortgage payment.  The mortgage arrears for Cenlar shows the claim scheduled as $6,217.00 and claim asserted for $9,423.13 is asserted and alleged; the arrearages are based on the inclusion of the erroneous and padded charges. *See* (Exhibit DC 2-C).

32.    The Plaintiff has come to learn and alleges MR gamed the bankruptcy system for its client Cenlar for TMHL.  A bankruptcy specialist would know:

(1) to nullify a chapter 13 "bifurcation accounting scheme" the case must be closed prior to confirmation.

(2) a creditor with a secured claim is in a good position; is incentivized not to file a proof of claim knowing if a case survived to get to a discharge status, (the order which wipes out debt) will not get rid of the lien on a property; it only eliminates the Debtors' liability to pay the debt, not the Creditor's ability to foreclose.

33.    Once a debtor's chapter 13 plan is confirmed in a case involving a long-term mortgage, the debtor's ongoing regular mortgage payments is required to be applied from the petition date based on the mortgage contract terms and original loan amortization as if no default exists. All pre-bankruptcy arrears must be accounted for separately under the petition as a part of the mortgage servicer's allowed claim. The very problem that mortgage creditors wanted resolved.

34.    Thus, if a debtor pays into the court all the arrearages and concurrently send the post petition mortgage payments to the creditor, who will happily deposit the checks into the established account if the petition is confirmed. Because the creditor's attorney did not file a proof of claim, the money paid to the Trustee will be disbursed to the unsecured creditors; thusly compromising the ability of chapter 13 debtor to save their homes after discharge as the payment non-disbursement to the Creditor was not applied toward the arrearages; the creditor ends up with the property and five years of payment in the end at the delight of the creditor.  An all around win-win strategy for the client.

35.    To the detriment and injury to the Plaintiff, two (2) additional futile Chapter 13, Petition 07-65438-JEM filed April 02, 2007, dismissed prior to confirmation on June 21, 2007. The mortgage arrears for Cenlar shows the claim scheduled for $15,924.00 and claim asserted for $26,266.63 is alleged and asserts the arrearages are based on the inclusion of erroneous and

16

padded charges; are jointly, vicariously, and severally liable for Plaintiff's distinct, direct, proximate, and concrete injuries to property and business. *See* (Exhibit DC 2-D).

36.     Petition 07-74375-JEM filed on September 03, 2007, dismissed prior to confirmation on November 15, 2007 shows no mortgage arrearages claims scheduled or asserted for Cenlar. *See* (Exhibit DC 2-E).

**September 4, 2007 Foreclosure**

37.     TMHL/Cenlar through their agent/law firm MR foreclosed under the Power of Sale on the property September 4, 2007, alleged to be authorized by Robert Michael Sheffield, the day after the third bankruptcy petition filed on September 3, 2007.

38.     The Assignment, in favor of the servicer TMHL was used as the authority to enforce a foreclosure *See* (Exhibit DC 1-O) and Deed under Power *See* (Exhibit DC 1-Q) purporting to convey an interest in Real property was recorded in the Office of the Clerk of Superior Court of DeKalb County, Georgia Records on October 4, 2007, by MR is alleged to have been concocted, prepared, and provided as an authoritative negotiated instrument. All are jointly, vicariously, and severally liable for Plaintiff's distinct, direct, proximate, and concrete injuries to property and business.

39.     The Plaintiff alleges Joe Loots, as witnessed, and notarized by Oriann Delany, an employee of Cenlar, conveying the described property to secure said Note, dated January 23, 2007 (*post November 9, 2006 initial bankruptcy petition date*) did not have the standing as purported to have:

>        Transferred, sold, assigned, conveyed, and set over to Thornburg
>        Mortgage Home Loans, Inc., whose address is 425 Phillips Boulevard,
>        Ewing, NJ 08618, as Assignee, its successors, representatives, and
>        assigns, all its right, title, and interest in and to a certain Security Deed
>        (or Deed to Secure Debt) executed by Althea Miley to Mortgage

17

Electronic Registration Systems, Inc. dated September 30, 2002. recorded in Deed Book 13763. Page 510, DeKalb County, Georgia Records....

40.     Further, the signature on the Assignment in favor of the servicer TMHL is alleged not to be Joe Loots' authentic signature as per erstwhile comparable J. Loots signatures on other public records *See* (Exhibit DC 1-P) as lawfully affirmed by O. Delany, the notary witness; that J. Loots as Vice President of Default for MERS whose known published position was Vice President of Default for Cenlar, (*See* Exhibit 2-F) is Joe Loots signature as the MERS Assignor who sold, assigned, transferred, set its hand, and seal to Assignee Thornburg Mortgage Home Loans Inc. on January 23, 2007.

41.     Prima facie evidence from the Securities and Exchange Commission (SEC) where there can be little question as to authenticity, nor can the fact that such statements or disclosures where publicly filed be reasonably questioned; is exposed to be a bogus, fraudulent, fabricated, and illegal Assignment in favor of the servicer TMHL and Deed under Power in favor of the servicer TMHL, used to justify the foreclosure as proven below.

42.     The Plaintiff asserts and therefore allege; the mortgage servicers and their representatives ran roughshod over the Plaintiff in their rush to foreclose; haphazardly failed to comply with even the most basic legal requirements of the bankruptcy system; all are jointly, vicariously, and severally liable for Plaintiff's distinct, direct, proximate, and concrete injuries to property and business.

43.     The Plaintiff  further asserts and therefore allege, TMHL fraudulently established itself as a secured creditor with rights pursuant to the Security Deed to enforce non-existent rights in their name against the note and property due to a default under the Note constitutes a fraudulent conveyance done "under color of" powers of attorney which is illegal on more than one front.

**Expulsion from Property**

44.     The Assignment in favor of the servicer TMHL, filed and recorded October 04, 2007 by MR to the Office of the Clerk of Superior Court of DeKalb County, Georgia Records, their File No. 52044606-FT1, purporting to convey an interest in real property is alleged to have been:

45.     Filed and recorded in an aura of legitimacy with willful disregard to lend false authenticity to the piece of paper entitled Assignment to be taken as true by the Superior Court of DeKalb County Recorder's Office; and

46.     Alleged to have knowingly and willingly filed and recorded the alleged defective and fraudulent document for the purpose of foreclosure pursuant to O.C.G.A. § 16-10-71 and O.C.G.A. § 16-10-20 as a positive assertion by notarization to effect foreclosure for their Client Cenlar having considerable financial incentives to keep those hiring them happy.

47.     Plaintiff alleges, MR knew once the Deed under Power was recorded legally or illegally, a challenge to the validity of the Deed under Power, foreclosure, or in defense of a dispossessory proceeding would not stand; because after a foreclosure sale, the former owner cannot attack the instrument or dispossession without first setting aside the foreclosure and deed, an end run against a homeowner and a win-win for client and vendor.

**State Court Action 07D56191**

48.     On October 2, 2007, Adam Silver, an attorney at law for MR as representative for TMHL, the purported owner of said property, applied to the State Court of DeKalb County, Georgia for a Writ of Possession to be issued against the Plaintiff as a tenant at sufferance after foreclosure sale was granted, case No.07D56191.

49.     On October 15, 2007, a Service Tack Summons and Complaint for a Dispossessory Order was posted by the Marshal of the State Court of DeKalb County, Georgia on the door of the premises containing a notice to answer by October 22, 2007. (*See* Exhibit DC 2-G).

50.     An Answer alleging willful violation of the automatic stay and counter-claim citing wrongful foreclosure was filed within seven (7) days as required by statue on October 18, 2007, was scheduled for a hearing on October 29, 2007.

51.     On October 29, 2007,  the bankruptcy case 07-74375 filed on September 03, 2007, was filed, and argued at the open court hearing.  The Warrant to Evict was stayed on October 29, 2007 by the Dispossessory Court pursuant to verification by the Bankruptcy Court a stay was in place, the Court issued a Stay Order. *See* (Exhibit DC 1-E).

52.     After two months lapsed, MR attorney Sheffield took a copy of the Trustee's Report for Petition 07-74375, filed on December 07, 2007 to the Magistrate Judge for review on December 14, 2007, (alleged to have known Cenlar was no longer listed, therefore no payment) the Judge scheduled a hearing for December 27, 2007.

53.     On December 27, 2007, the Magistrate State Court of DeKalb County entered a Judgment and Writ of Possession to TMHL and dismissed the counter claim without prejudice. *See* (Exhibit 2-H).

54.     A Notice of an Application for a Discretionary Appeal to the Georgia Court of Appeals was filed on December 28, 2007 requesting an injunction to the order citing wrongful foreclosure.

55.     On January 30, 2008, MR Attorney Sheffield, filed into the State Court of DeKalb County, a Motion to Compel Payment of Rent into the Court due to the foreclosure on

20

September 4, 2007, in favor of Thornburg Mortgage Home Loans, Inc., (the mortgage servicer) declaring to be the successful bidder) was entitled to rent during the appeal; was justified by the attachment of the alleged fraudulent Deed under Power. *See* (Exhibit DC 2-I).

56.     On February 11, 2008, the Motion was approved by the State Court of DeKalb County, stipulating the Plaintiff to pay $8083.87 by February 18, 2008 and $1400.00 by the 5th of each month thereafter to be held in the registry of the court.

57.     The Georgia Court of Appeals granted the Injunction Application docketed as Appeal No. A08A1034 was granted on March 11, 2008 with direction to file a Notice of Appeal within ten days, which the Plaintiff complied.  (*See* Exhibit DC 2-J).

**First Indication of Foreclosure Irregularities and Misdeeds**

58.     In 2008 while challenging a September 4, 2007 foreclosure citing wrongful foreclosure the Movant appealed the trial court's grant of a writ of possession in favor of *Miley v. Thornburg Mortgage Loans,* 294 Ga. App. 140, 141 (668 SE2d 560) (2008)), the Movant received a Payoff Statement dated November 19, 2008, some fourteen (14) months after the fraudulent foreclosure auction and sale of Plaintiff's property to Thornburg Mortgage Home Loans, Inc.,(who was the servicing agent not beneficial owner), held on the courthouse steps of DeKalb County, Georgia. *See* (Exhibit DC 1-F).

59.     This was a complete surprise as it was unbeknownst to the Plaintiff the entire loan history of an investor involvement. Plaintiff alleges she relied to her detriment on the original representations in the Security Deed, being MERS acting was nominee for BancMortgage Financial Corp, as there were no previous indications otherwise. This being the first indication as to an investor involvement, Plaintiff embarked on a fact finding mission shortly thereafter.

60.     Plaintiff fought off eviction through various court proceedings in DeKalb County Magistrate, Superior Court, and Appellate courts citing violations of automatic stay and bankruptcy irregularities from October 2007 to March 2009.

61.     The *Miley v. Thornburg Mortgage Loans,* 294 Ga. App. 140, 141 (668 SE2d 560) (2008)), was dismissed due failure to include a trial transcript in the record, a technical procedural error not on merit, on or about March 4, 2009.

62.     On or about March 20, 2009, Defendants TMHL/Cenlar/McCalla Raymer in concert pursued and received an Order ejecting the Plaintiff from her home while representing to the Court that their actions were lawful and that TMHL had the present right, ownership, and authority to pursue an eviction as Lender. *See* (Exhibit DC 2-K).

63.     On or about March 27, 2009, a Notice of Lis Pendens was filed in the DeKalb County Property Records, County Clerk's reference Deed Book 13763, Page 510, for property commonly known as 1525 High Haven Court, Atlanta, GA 30329 to notify the world, the ownership of said real property was the subject of a legal controversy and that anyone who purchases it takes it subject to any claims asserted in a Court action.

**Second Indication of Foreclosure Irregularities and Misdeeds**

64.     A letter dated April 23, 2009, after eviction from the home on or about March 29, 2009, was forwarded to the Movant from Thornburg Mortgage Home Loans, Inc., in its capacity as servicing agent, announcing their impended bankruptcy filing with instructions for future loan payments: stating to continue to make payments on the mortgage as you have been until you are provided with new instructions from the company acquiring your loan in about 90 days who would inform how to continue making payments on the mortgage, assuring the terms

22

of your mortgage will remain the same and provided an online link to access loan information and make payments online during the transition period. *See* (Exhibit DC 1-G).

65.     An online access was offered if one wished to access their information. The activity for Loan No. 0012352381 showed the transactions from November 17, 2008 (two days before the payoff notice) to November 17, 2009 the date the loan was removed, and the file closed. *See* (Exhibit DC 1- H).

**TMHL Files Petition for Chapter 11 Relief**

66.     On or about May 1, 2009, TMST Homes Loans Inc., f/k/a Thornburg Mortgage Home Loans. Inc.  Case No. 09-17791 with the Debtors in Possession (DIP) privileges, along with other affiliated entities filed a consolidated Voluntary Petition for Relief the above captioned Case No. 09-17787-DK.

67.     On or about July 06, 2009, the Movant filed a Proof of Claim, No. 0122 in Case No. 09-17791 with the Bankruptcy Court, alleging fraudulent conveyance of the Property. *See* (Exhibit DC 1- I).

68.     On or about July 31, 2009, the property identified in Proof of Claim No. 0122 was sold to a person bearing the sir name of Defendant Burns; an insider with DIP privileges, employed in the official capacity as the Senior Vice President for Thornburg Mortgage Home Loans Inc. and in an official capacity as Secretary of TMHL as Mortgage Servicer, reported to be responsible for managing the delinquent loan portfolio and making all the decisions regarding delinquent loans. *See* (Exhibit DC 1- R).

69.     A debtor in possession by bankruptcy statute, may not use "cash collateral" without the consent of the secured party or authorization by the court, which must first examine whether the interest of the secured party is adequately protected. 11 U.S.C. § 363. Section 363

defines "cash collateral" as cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents, whenever acquired, in which the estate and an entity other than the estate have an interest. It includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a creditor's security interest.

**Adversary Claim-00732 filed in consolidated Case 09-17787**

70.    On or about October 22, 2009, an Adversary Claim-00732, Case 09-17787 was filed in the United States Bankruptcy Court of Maryland, a Complaint for Recovery and Turnover of Property and Permission to proceed against TMHL in a State Court.

71.    On October 22, 2009, the same date the Adversary Claim was filed, the Plaintiff's Loan No. 0012352381 Activity File *See* (Exhibit DC 1-H) suspiciously shows the loan was removed from the account through a foreclosure transaction some two years after foreclosure on September 4, 2007 on the very date the Adversary Claim was filed.

**TMHL Lose DIP Status - Court appoints Chapter 11 Trustee for the Debtors**

72.    On or about October 28, 2009, on application of a United States Trustee, the Bankruptcy Court entered an Order Approving Appointment of a Chapter 11 Trustee in the consolidated Voluntary Petition for Relief in Case No. 09-17787.

73.    The Chapter 11 Debtors-in-Possession insiders including Defendant Burns, which allows the Debtor's incumbent management team to command the liquidation process, were accused by the United States Trustee of having embarked upon a multi-faceted conspiracy, where the Debtors-in-Possession insiders converted and misappropriated substantial amounts of the Debtors cash, proprietary and confidential information and used the Debtors personnel and

fixed assets to start up a secret new business venture concept by misrepresentations and half-truths as a way to avoid financial ruin.

74.     The Plaintiff alleges, Defendant Burns, a Debtor-in-Possession insider, authorized to operate under Chapter 11 without the need for notice or hearing; conspired to take possession of the property identified in Proof of Claim No. 0122, which I came to learn, as shown below, was a mortgage loan classified as REO, pooled in TMHL Trust 2002-4 Mortgage Servicing Portfolio; fraudulently assumed, assigned, and sold the REO property in the portfolio on July 31, 2009, as property of TMHL's estate in the ordinary course of business instead of belonging to the portfolio of the Trust for Thornburg Mortgage Pass-through Certificates, Series 2002-4 Trust, was sold to a third party bearing Defendant Burn's sir name. *See* (Exhibit DC 1-R).

75.     The Plaintiff alleges, in addition to the conspiracy cited by the appointed Chapter 11 Trustee as a way to avoid financial ruin, Defendant Burns also conspired to misappropriate other resources of the Debtor's estate, by taking advantage of the given authority as a debtor-in-possession non-requirement to give notice or request a hearing to assume, assign, or sell Plaintiff's property; disguised by misrepresentation the property identified in Proof of Claim No. 0122 as property of TMHL's estate, was sold in the ordinary course of business; exercised a clean-up operation to remove the mortgage from the records before the inevitable sale of the mortgage servicing portfolio; plundered the asset from the Corporations mortgage servicing portfolio; in so doing, liquidated Plaintiff's Proof of Claim No. 0122, directly harming Plaintiff's right to claim the property causing distinct, direct, and proximate injuries to Plaintiff's property and business.

25

76.     On or about February 16, 2010, the Court dismissed the Movant's Complaint for

lack of standing pursuant to Rule 12(b)(1).

**Proof of Fraudulent Assignment and Foreclosure**

77.     After years in pursuit of the identity of Investor T43 002200021729 for Plaintiff's

loan 001235238 identified in the November 19, 2008 Pay-Off Statement (Exhibit DC 1-F); a

search on the Securities and Exchange Commission website in 2014 revealed an unknown

history of TMHL's transaction involving loans on around September 30, 2002, the Plaintiff's

loan acquisition date and the connection TMHL's history had to loan prior to servicing the loan.

**Mortgage Loan Purchase Agreement Discovery**

78.     The Plaintiff came to discover TMHL, was a taxable REIT, who acquired,

securitized, and serviced residential mortgage loans.  Learned there existed a Mortgage Loan

Purchase Agreement between Thornburg Mortgage Home Loans, Inc. as mortgage loan seller

and Structured Asset Mortgage Investment Inc. as purchaser dated on or about November 1,

2002; issued on or about November 26, 2002, close to Plaintiff's loan origination date September

30, 2002 for a trust named Thornburg Mortgage Pass-through certificates, series 2002-4 was

revealed.[8]

79.     A  thorough review of the registered Mortgage Loan Purchase Agreement for

Thornburg Mortgage Pass-through certificates, series 2002-4, filed with the SEC (*See* DC

Exhibit DC 1-I) shows Defendant Deborah Burns, (pg. 18) Title: Vice President and Mortgage

Seller for TMHL;  by signature entered into a Mortgage Loan Purchase Agreement with Baron

---

[8] http://www.secinfo.com.  The SEC documents are relevant to determine what statements or disclosures are
actually, contained therein as there can be little question as to authenticity, nor can the fact that such statements or
disclosures where publicly filed be reasonably questioned are integral to the complaint.

Silverstein Title: Vice President of Structured Asset Mortgage Investment Inc. (SAMI) dated

November 1, 2002.

80.     The Purchase and Sale of the Mortgage Loans agreement provides in pertinent part:

> It is the express intent of the parties hereto that *the conveyance of the Mortgage Loans by the Mortgage Loan Seller to the Purchaser, as contemplated by this Agreement be, and be treated as, a sale*. It is, further, not the intention of the parties that such conveyance be deemed a pledge of the Mortgage Loans by the Mortgage Loan Seller to the Purchaser to secure a debt or other obligation of the Mortgage Loan Seller. 10(b))

Mortgage Loan Transfer:

Section 4(b):

> "Pursuant to various conveyancing documents to be executed on the Closing Date and pursuant to the Trust, Pooling and Servicing Agreement, *the Purchaser* (SAMI) *will assign on the Closing Date all of its right, title and interest in and to the Mortgage Loans and the other assets set forth in Section 2(d) hereof, to the Trustee (Deutsche), on behalf of the Trust, for the benefit of the Certificateholders*." (pg. 8)

Section 4 (c):

> "The Mortgage Loan Seller (TMHL) and the Purchaser (SAMI) *acknowledge* hereunder that *all of the Mortgage Loans* and the related servicing (including the rights of the Mortgage Loan Seller (TMHL) under the Servicing Agreements) will **ultimately** *be assigned to the Trust or Trustee, on behalf of the Trust, for the benefit of the Certificateholders*, **on the date hereof**."(pg. 8)

Recordation of Assignments of Mortgages:

Section 6:

> "*With respect to each MERS Mortgage Loan*, the Mortgage Loan Seller (TMHL) will cause the applicable Servicer(s) (TMHL/Cenlar), at the expense of the Mortgage Loan Seller (TMHL) and at the direction and with the cooperation of the Seller (SAMI) , the Trustee (Deutsche) and the Master Servicer (Wells Fargo), to take such actions as are necessary to *cause the Trust to be clearly identified as the owner of each such Mortgage Loan on the records of MERS for purposes of the system of recording transfers of beneficial ownership of mortgages maintained by MERS*." (pg. 10)

81.    The Plaintiff specifically avers this discovery is prima facie evidence, Plaintiff's loan was sold by Lender Banc Mortgage Financial, Corp. approximately two (2) months after closing date to "loan aggregator" Thornburg Mortgage Home Loans, who subsequently sold Plaintiff's loan on or around November 1, 2002 as Thornburg Mortgage Home Loans as " Mortgage Loan Seller" to Structured Asset Mortgage Investment Inc. as "Purchaser" whose intent was to "sell" the mortgage loans to Thornburg Mortgage Securities Trust 2002-4, a Delaware statutory trust (the "Trust") created pursuant to a trust, pooling and servicing agreement, dated November 1, 2002 filed with the Securities and Exchange Commission, Number 333-68542) relating to the Mortgage Pass-Through Certificates (Exhibit DC 1-I,  pg.3).

82.    The Plaintiff believes and therefore alleges and specifically avers, TMHL as Servicer intentionally distorted their Mortgage Loan Banker/Lender/Aggregator/Seller/Servicer role distinction to makes it challenging to distinguish and determine which entity was the true holder of the subject loan as the beneficial owner by failing to properly identify their representative capacity "as servicer" in a Trust carrying their name for its own benefit, by concealing a mandated material fact.

**Trustee Notification and Warnings to Securitized Mortgage Servicers**

83.    The assigned Trustee for Thornburg Mortgage Securities Trust 2002-4, Deutsche Bank National Trust Company (DBNTC) sent an urgent and sensitive memo on October 8, 2010 to the Securitization Loan Servicers RE: Allegations Regarding Certain Servicing Foreclosure Procedures reminding the Servicers:

> The pooling and servicing agreements or other governing documents for the Trusts (collectively, the "Governing Documents") provide that the Servicer is solely responsible for the performance of all loan-level remedial collection activity on behalf of the  beneficiaries of the Trusts, including, without limitation, all foreclosure activity and all maintenance and sales of resulting REO properties. The Governing Documents

28

typically require the Trustee to furnish the Servicer with powers of attorney that allow the Servicer to sign documents and institute legal actions, including foreclosure proceedings, in the name of the Trustee on behalf of the Trusts in connection with these servicing activities.  See (Exhibit DC 1-N).

84.      On August 30, 2007, the assigned Trustee for Thornburg Mortgage Securities

Trust 2002-4, Deutsche Bank National Trust Company (DBNTC), sent a memo Securitization

Loan Servicers Ref: <u>Compliance with Laws, Rules and Regulations In Connection With</u>

<u>Foreclosures On Securitized Assets</u> reminding Servicers to:

> At all times properly identify your representative capacity, as servicer, and DBNTC'S or DBTCA's capacity "as Trustee of insert name of relevant Trust!" in all notices, pleadings, correspondence, or other documents relating to the mortgage loans, REO properties, and other Trust assets. Title to properties should never be held, and notices concerning properties should never be issued, in DBNTC'S or DBTCA's name without identification of our trustee capacity.

85.      On July 28, 2008, DBNTC sent a memo, (See Exhibit DC 1-N) Ref: <u>Proper</u>

<u>Description of the Servicer, the Trustee, and their Roles in Proceedings</u> stating:

> Servicers act for the benefit of the Trusts, and in the name of the Trustee, but are not themselves the Trustee. Servicing professionals and other agents engaged by servicers have adopted widely varying approaches to identifying the source of their authority. Some say they represent "the servicer," others say they represent "the trustee" or "the trust." and some simply say they represent "the bank" or "the lender." These disparate practices have caused significant confusion regarding the roles of the parties to securitization transactions. The Trustee believes that all persons retained by the servicer should accurately identify the specific role or capacity in which they are acting. For example, an attorney for a servicer foreclosing on a property mortgaged to a securitization Trust would be less accurate in this respect if he or she claimed to be "[Name], Attorney for [Name Trustee]." A more accurate statement would be "[Name], Attorney for [Servicer Name], Acting for [Name of Trustee] as Trustee of the  [Name of Trust] in no event should servicer' retained foreclosure professionals, including counsel, mislead third parties, including courts, into believing that the Trustee directly controls the foreclosure process or any related litigation process in addition, the making/securitizing" loans. Such descriptions inaccurately reflect the role of a securitization trustee and may expose the Trusts and the Trustee to unwarranted legal liability and expense.

86.     As shown, *See* (DC Exhibit 2-L) at no time from the earliest communication in
2003 to the last communication in 2006 before the foreclosure; the above directives were not
followed or adhered to. As stated, the first indication of investor No. T43 200021729
involvement with Plaintiff's mortgage was the November 19, 2008 letter, inadvertently sent to
the Plaintiff approximately thirteen months after the alleged fraudulent foreclosure on
September 4, 2007.

**Mortgage Loan List Backing Thornburg Mortgage Certificates, Series 2002-4**

87.     The Mortgage Loan Schedule was not attached with the registered Mortgage
Loan Purchase Agreement for Thornburg Mortgage Pass-through Certificates, Series 2002-4
nor attached to the registered Trust, Pooling and Servicing Agreement with the SEC under
Number 333-68542, Exhibit 99.1 dated as of November 1, 2002; stating "Schedule B was only
available from Thornburg Mortgage Home Loans, Inc. upon request."

88.     After the passing of additional time and persistent hunt for the stated attached
Schedule B to the registered Mortgage Loan Purchase Agreement for Thornburg Mortgage
Pass-through Certificates, Series 2002-4, filed with the SEC; the Plaintiff was able to locate the
Mortgage Loan Schedule with respect to each mortgage loan for Thornburg Mortgage Pass-
through certificates, Series 2002-4 at the Wells Fargo Bank Minnesota, National Association, as
Master Servicer and Securities Administrator site *ctslink.com*.

89.     The file for Thornburg Mortgage Securities Trust 2002-4 was discovered to
include the No. 200021729, the Investor identified on the Payout Statement (Exhibit DC 1-F)
received by Plaintiff on or about November 19, 2008, over a year and three months after the
foreclosure auction of said property on September 04, 2007.

30

90.     The data reveals securitized loan 200021729 was for a property located in

Georgia, DeKalb County, 30329, with an origination amount of $226,200; is synonymous with

TMHL/Cenlar's Lender Processing Center loan information for Plaintiff's consumer loan No.

0012352381. *See* (DC 1-H).  The data consisted of Investor Loan Level and Loan Collateral

Level Data files.

**Investor Loan Level Data File**

91.     The Investor Loan Level Data file *See* (Exhibit DC 1-K) according to Law

Insider, generally refers to the individual loans included in a securitized loan pool, prepared as

of a specific date, updated monthly, generate prepay, default, delinquency, and severity curves

over the life of loans given some econometric input assumptions, such as unemployment or

home price appreciation;  the Servicer is responsible for ensuring the instruments used in

connection with changes affecting Mortgage Loans are in proper form, and that all requirements

under Applicable Laws are met.  Any monies received and applied to the mortgage loan for a

release, easement, or other amendment or modification should be set forth in the Mortgage Loan

File.

92.     A through review of the Loan Level Data Investor file shows the Servicer'

documentation as to No. 200021729, identified on the Payout Statement (Exhibit DC 1-F)

received by Plaintiff on or about November 19, 2008 reflects the following logged details:

| | |
|---|---|
| Bankruptcy: | Status Code(BB): 12/06, 02/07, and 05/07: actual filing months being 11/06, 04/07 and 09/07; |
| Foreclosure: | Status Code (FF): 11/06 (1st BK filing),  03/07, 04/07 (2nd BK filing),  06/07, 09/07;  (five filings instead of one) |
| REO: | Status Code (RE):     10/07 - 03/08; |
| Misc: | Status changed from (RE) REO to (FF)Foreclosure:  04/08, 5/08 six (6) months after foreclosure; |

Status returned from (FF) Foreclosure to (RE) REO:  06/08 - 09/09;

Status Removed:  10/09

Status changed to 9999: 11/09  File removed and relocated to an account named "Old Prudential Collateral File":  An alleged cover-up move.

93.     The Loan Data Investor File reveals, the Plaintiff was documented in a foreclosure status instead of a bankruptcy status immediately after the last Champion Legal Notice of Default publication date November 2, 2006 or initial foreclosure date November 6, 2006 and mostly remained so through out the bankruptcy proceedings.

94.     It also shows as to securitized loan No. 200021729, incidences of accounting and data manipulation during bankruptcy proceedings, after the foreclosure, and property record as REO.

95.     The Plaintiff asserts and allege the mortgage servicers and their representatives committed fraudulent accounting maneuvers, deliberate falsification of underlying accounting records,  knowingly omitting transactions, engaged in creative accounting, and material misrepresentation of financial statements leading to fraud.  As a method of concealment, to hide the fraud, the Plaintiff alleges a credit was applied to an old and closed account, a method termed fraudulent write-off.

96.     The Plaintiff asserts and therefore allege, the mortgage servicer(s) pilfered Plaintiff's claim No. 0122 in November 2009, after the filing of Adversary Claim 732 in October 2009, causing distinct, direct, and proximate injuries to Plaintiff's property interest and business.

**Series Level Collateral Investor File**

32

97.     The Series Level Collateral Investor File *See* (Exhibit DC 1-L) according to the Law Insider comprises all related documents which come into the possession and held by the Servicer are segregated from the other books and records of the Servicer to be appropriately marked to clearly reflect the ownership interest of the Owner in such Collateral File and related document as to each item of Collateral; set forth a schedule to be delivered to Master Servicer consisting of updated information on the collateral in a transaction such as principal balances or delinquency information. The information is used by Master Servicer to summarizes the information found in the monthly statement to certificate holders.

98.     A thorough review of the Series Level Collateral Investor File from October 2008 to September 2009 shows securitized loan 200021729 delinquency information documented as 70 meaning "REO" status. The October 2009 report (the month Adversary Claim-00732 was filed) shows the status was changed to 60 meaning "Paid in Full". The November 2009 report shows all information was removed concerning securitized loan 200021729 and $0.00 balanced out. The Plaintiff alleges "on book fraud," in which the Plaintiff's property's July 31, 2009 sales funds were laundered as corporate advances on Plaintiff's consumer file account beginning on August 5, 2009. *See* (Exhibit DC 1-H).

**Summary Loan and Collateral Level Investor Files**

99.     Research of both the Loan Level and Collateral Level Investor files for securitized Loan No. 200021729 for Thornburg Mortgage Securities Trust 2002-4 from November 2006 to November 2009 for mandated transaction reporting for Bankruptcy, Foreclosure, REO, and Loan repurchases shows the data for the transactions with respect to the mortgage loan account raises serious questions about the accuracy of the Investor information

documented by mortgage servicers appears to have been stage-managed and set-upped so as to achieve a desired effect.

**The Master Servicer**

100.    The Master Servicer according to Law Insider collect servicer payments for distribution to investors: oversee servicers' activity and provide investor reporting, default administration and cash management; collect, aggregate, reconcile, analyze, and report on mortgage loans and associated cash remittances and issues in a monthly Distribution Summary and Details Reports.

101.    The Reports are based on the mandated transaction monthly reporting from the Servicer for Bankruptcies, Foreclosures, REOs, Loans Paid in Full, Loan Repurchases, Substitutions,  Liquidated Loans, Curtailments, Modifications, and Breaches;  report on default administration of the mandated transactions information, cash management; collection; aggregate and reconciliation analysis; and report on mortgage loans and associated cash remittances; the Master Servicer summarizes the information from the Servicer and provide detailed collateral and portfolio analysis for the lenders, issuers, and investors. *See* (Exhibit DC 1-M).

**Certificate Holders Distribution Summary and Detail Investor Reports**

102.    A thorough review of the Certificate Holders Distribution Summary and Detail Investor Reports from November 2006 to November 2009 for securitized Loan No. 200021729 aka consumer loan No. 0012352381 *See* (Exhibit DC 1-H) prove by clear and convincing evidence, was not once reported.

103.    At no time was the information updated for the lenders, issuers, and investors for securitized Loan No. 200021729 as to the mandated reporting of Bankruptcies, Foreclosure,

REO, or a Paid in Full; nor Loan Repurchase, Substitution Loan, or Liquidated Loan.  That information was conspicuously left off all monthly reports from 2006 to 2009 as to all actions documented in the Loan and Series Level file reports.

104.    No record exists of the reporting of the mortgage assignment transaction on January 23, 2007 from MERs to THML used for foreclosure purposes; nor a  report of the July 31, 2009 sale of securitized Loan No. 200021729 uncovers the Servicer(s) failure to report the mandated information to the Master Servicer, who reports to the lenders, issuers, and investors.

**Plaintiff's Consumer Loan File**

105.    The Plaintiff's Consumer Loan File,  No. 0012352381 for the Mortgagor, See (Exhibit DC 1-H) akin to securitized Loan No. 200021729 activity shows payments, escrow account activity, disbursements loan activity from 11/17/ 2008 to 12/14/2009.

106.    According to researchers Levitan and Towney, servicers are compensated in four ways: a servicing fee, float income, ancillary fees, and a retained interest in the securitization. The values of three of the four types of compensation servicing fees, float, and retained interests—vary based on factors beyond the servicer's control, particularly mortgage prepayment speeds, which are largely a function of interest rates.

107.    A servicer's ability to influence its net servicing income depends on its ability to levy ancillary fees and to control servicing costs. This compensation structure incentivizes servicers to aggressively pursue ancillary fees and to pursue loss mitigation strategies (foreclosure) that minimize costs, even if they fail to maximize returns to investors (Levitan and Towney).

108.    Activity on consumer loan No. 0012352381 from November 17, 2008 to November 19, 2008, shows transactions were charged against a hazard insurance account for

$2,174.00 and an escrow advance of $4, 348.00 (two days before the inadvertent payoff notice

(after foreclosure on September 4, 2007) dated November 19, 2008 was sent.   Researchers

(Levitan and Towney,  pg. 6, note 8) clarifies hazard insurance is not in the form of a fixed

payment, but in the form of a service.

109.    The Investor Loan and Collateral Level files during this period was documented

as REO.  The Servicer is entitled to retain the amount of the servicing fee with respect to each

mortgage loan, including REO Properties based on the pre-REO balance (Levitan and Towney).

110.    From December 2008 to November 2009, the account was in a mostly Corporate

Advance State.  According to the Law Insider, advances are made by a "*Borrower as Servicer*"

pursuant to the Servicing Contracts to foreclose or undertake similar action with respect to a

Mortgage Loan and any other out of pocket expenses incurred by a "*Borrower as Servicer*."

111.    Servicers are required to advance monthly principal and interest, taxes and

insurance payments on delinquent loans, advance legal fees, maintenance, and preservation

costs (corporate advances) on properties that have already been foreclosed and become wholly

owned by the Trust (REO), rather than sold to a third party.

112.    Servicers according to Levitan and Towney, are able to recover their Principal &

Interest advances from the net proceeds of the property stating, "in the majority of cases, the

servicer may recover advances in excess of loan proceeds from pool-level proceeds as explained

by Ocwen Financial, a major subprime servicer who reported "advances have the highest

standing and are "top of the waterfall"."

113.    With the REO asset still recorded *See* (Exhibit  DC 1-H), TMHL as servicer

appears to document its alleged fraudulent July 31, 2009 sale, reported actual received

liquidation proceeds of $223,600.00 *see* (Exhibit DC 2-M ), is alleged to have been laundered as

the $205,915.64 corporate advance deposit on 08/05/2009, a $17,684.36 difference from the $223,600.00 liquidation proceeds where the Borrower (alleged to be Defendant Burn's family member) is recorded as receiving a $178,800 loan secured by the property recorded in the county property records on August 6, 2009 (See Exhibit DC 1-R), a $44,800 difference from the liquidation proceeds; equals to approximately $63,084.36 off the top of the liquidation proceeds, opened a second immense new revenue stream.

114.    Conspicuously, TMHL listed its address as the Seller of Plaintiff's property as 2691 S. Decker Lake Lane, West Valley City, UT 84119 (Exhibit DC 2-M ) believed to be the address of GR Financial, LLC of West Valley, UT, established in 2007 under NAICS 522310 - Mortgage and Nonmortgage Loan Brokers, instead of TMHL's own Mortgage and Nonmortgage Loan Brokers Utah Entity, Number 5219374-0143 registered under NACIS 5223 with the address listed for its principal place of business in Santa FE, NM.

115.    NACIS 5223 industry groups are comprised of establishments primarily engaged in facilitating credit intermediation by performing activities such as arranging loans by bringing borrowers and lenders together.

116.    The cancellation of the July 31,2009 debt on April 4, 2015 suggests TMHL instead, made use of the shadow banking system, defined as an intermediated, market-based form of lending involving entities and activities outside the traditional commercial banking system. *See* (Exhibit 2- N).

117.    As shown, by the 2009 Warranty Deed (Exhibit DC 1-R) and the cancellation of the secured deed filing (Exhibit DC 2-N ); TMHL thru its outside Broker-Dealer utilized JPMorgan Chase warehouse facility in Louisiana to get the finance to re-securitize the property

and alleged to have arranged for an alleged family member to purchase and claim title to the property.

118.   According to JPMorgan Chase & Co's Annual Report for fiscal year ended December 31, 2009[9], the consumer lending business unit includes warehouse loans and related hedges of mortgages originated with the intent to sell and mortgage sales and servicing related to the repurchase of previously sold loans.  The main entities involved in these mortgage securitizations were Fannie Mae and Freddie Mac government-sponsored enterprises (GSEs).

119.   Warehouse lending is not mortgage lending. A warehouse line of credit is issued which allows a registered broker-dealer through its trading book to obtain a finance loan without using capital. The life of the credit line generally extends from its origination to the time it is sold on the secondary market either directly or through securitization.  When the original loan is re-originated as in this case, the broker-dealer receives funds from the creditor to pay back the warehouse lender and profits by earning points and original fees.

120.   Research shows when a private note holder desires to liquidate a mortgage, deed of trust or contract for deed in the shadow banking system, generally the seller has the option to convert all or any portion of the future payments into cash.

121.   The Plaintiff avers and alleges this is a third direct method a revenue stream for Defendant Burns from the sale of Plaintiff's pilfered property title.

122.   The Plaintiff alleges Defendant Burns used the Plaintiff's pilfered property title and TMHL's client's pilfered asset which TMHL was the custodian, to fulfill her own self-dealing interest seeking unjust enrichment through a process commonly referred to as rehypothecation, the act referred to repledging a client's asset as collateral to obtain funding.

---

[9]Available on the SEC's website at https://www.sec.gov

123. The Plaintiff alleges Defendant Burns further enriched herself thru an alleged family member in this non-monetary transaction at the expense of the Plaintiff's pilfered property title to secure the $178,000 no-cost loan (Exhibit DC 1-R) on or about August 05, 2009 through GR Financials, LLC of West Valley, UT from JPMorgan & Co using Plaintiff's fraudulently acquired property appraised in 2009 at $272,300.00 (DC Exhibit 2-O); profited $94,300.00 in an equity gain due to the illegal gotten gain from the transaction for her own economic self-dealing interest seeking unjust enrichment, as a result caused distinct, direct, and proximate injuries to Plaintiff in real property and concrete business losses.

124. As shown, *See* (Exhibit DC 2-P), the alleged criminal act, encompassing many forms of felonious, deceitful, and false pretenses; intentionally and fraudulently taking possession or control of property perpetrated with the intention to convert for the taker's use including potential sale was a big score as the property just kept on giving.

125. Plaintiff's fraudulently acquired property appraised in 2009 at $272,300.00 (DC Exhibit 2-O) a $94,300.00 in property value; scored a gain from the $470,000.00 transaction in 2017, a gain of $197,700 in property value from Plaintiff's pilfered title, via economic self-dealing interest seeking unjust enrichment to permanently deprive Plaintiff of property as a result caused distinct, direct, and proximate injuries to Plaintiff in real property and concrete business losses.

126. On or about October 21, 2009, transactions on the Plaintiff's Consumer File (Exhibit DC 1-H) shows a total of $42,491.29 was charged and moved between the corporate advance deposit account and escrow advance request account before the loan was removed from the consumer file through foreclosure on October 22, 2009, (the filing date of Plaintiff's Adversary Claim-00732).

39

127.    Simultaneously, as shown above, the October 2009 Investor Loan Level the REO status was removed and the record was removed to an account named "Old Prudential Collateral File" in November 2009; the information in the Investor Collateral Loan Level file as to securitized Loan No. 200021729 was documented in October 2009 as 'Paid in Full" is not reflected in the Loan Level or Consumer files nor the Distribution Report for Thornburg Mortgage Securities Trust 2002-4 pool of loans held by certificate holders, who at no time received updated Distribution Summary and Detail Investor Reports from November 2006 to November 2009 for securitized Loan No. 200021729.

128.    The Plaintiff has proved by clear and convincing documented evidence; assert and allege, TMHL in its capacity as Servicer of consumer loan No. 0012352381 (Exhibit DC 1-H), abused and manipulated its servicer contractual obligation for its own self-dealing interest seeking unjust enrichment to extort control of Plaintiff's property; used the property's foreclosure and REO status in its conspiracy and closed-ended scheme to procure ownership; used Plaintiff's consumer file like a cash cow by stringing things allow for years while collecting huge fees where defaults, foreclosures, and other liquidations function like prepayments[10]; was akin to a daylight robbery being committed by TMHL in its capacity as mortgage servicer where according to (Levitan and Towney, pg. 48 ) foreclosure expenses have priority in repayment over all other claims, including investors; caused direct and proximate injuries to Plaintiff in real property and concrete business losses.

**Superior Court of DeKalb County Action 15CV2019**

129.    On November 30, 2015, the Plaintiff in  *Althea Miley, et al  vs Thornburg Mortgage Home Loans, Inc, (TMHL) N/K/A TMST Home Loan, Inc., Deborah J Burns, Cenlar*

---

[10] *See* Peter Eavis, *Unlocking the MSR Mystery*, WALL ST. J., Oct. 23, 2009, at C10.

*FSB, Oriann Delany, & McCalla Raymer, LLC.*, filed a Complaint and Action at Law for Cancellation Fraudulent Deeds; Recovery of Property; and Recovery of Damages not Associated with the Value of the Property at Issue.

130.    The Plaintiff alleged, TMHL in concert with others (1) misrepresented its standing as a Real-Party-In Interest/Holder-in-Due-Course when they foreclosed on property commonly known as 1525 High Haven Court, Atlanta, GA 30329 at a time they were alleged not to have been the beneficial owner of said property; (2) alleged to have converted property for its own use and benefit; (3) alleged to have concocted, prepared, and provided an alleged authoritative, fabricated, colorable, and illegal Assignment and Deed under Power to justify the foreclosure; (4) provided alleged fabricated documents which were alleged to have been known to be false or should have been known to be false at the time said attestation were made; and (5) assertions the good-faith duty upon a mortgagee to conduct and exercise fairly a just foreclosure auction under the Power of Sale in the Deed to Secure Debt was not adhered to, resulting in unlawful acts to commit this alleged extrinsic fraud as gravamen under statutes O.C.G,A. § 16-9-60(b), foreclosure fraud; 16-10-20 false statements and writings, concealment of facts, and fraudulent documents; and  civil RICO pursuant to O.C.GA. § 16-14-4(a);O.C.G.A. § 16-8-2; and O.C.G.A. § 16-8-4(a).

131.    On or about May 25, 2016, Joel I. Sher as Chapter 11 Trustee of and for Thornburg Mortgage Home Loans, Inc. filed a Suggestion of Bankruptcy in *Althea Miley, et al vs Thornburg  Mortgage Home Loans, Inc, (TMHL) N/K/A TMST Home Loan, Inc., Deborah J Burns, Cenlar FSB, Oriann Delany, & McCalla Raymer, LLC,*  Case No. 15CV12019 in the Georgia case citing the October 22, 2009, Adversary Claim-00732 in Case 09-17787, filed in the United States Bankruptcy Court of Maryland, a Complaint for Recovery and Turnover of

41

Property and Permission to proceed against TMHL in a State Court.  As a result of the Suggestion of Bankruptcy that was filed, the case was stayed as to TMST Home Loans, Inc.

132.       The Superior Court failed to recognize the Complaint was transferred from the Federal Court; rejected the tolling of the statute of limitations under O.C.G.A. § 9-3-96 in opposition to the District Court's findings; dismissed the case citing statute of limitation under O.C,G.A. . § 9-3-33;  issuing a Final Order dismisses the complaint as to some of the Defendants.

133.    The final judgment did not conclude all matters actually presented; or considered all allegations in reaching the decision; prevented the Plaintiff from fully presenting case so that no real contest occurred on the extrinsic and collateral fraud; and prevented the complaining party from making a full and fair defense.

134.    O.C.G. A. § 9–11–54 (b) allows the court to "direct entry of a final judgement as to one or more but fewer than all of the claims or parties" if "there is a no reason for delay" stipulation which operates as a partial summary judgment on the merit of the case.

135.    The final judgment contained no language which could be considered an express direction that a final judgment was entered under O.C.G.A. § 9–11–54 (b).  With ongoing proceedings for the remaining defendants in such circumstances, under the statute is not a final judgment and does not dispose of all claims and the doctrine of res judicata would not be violated.

136.    The Plaintiff  later discovered, TMST Home Loans, Inc. f/k/a Thornburg Mortgage Home Loans, Inc. was on record giving a status report as Appellee TMST Home Loans, Inc. f/k/a Thornburg Mortgage Home Loans, Inc. to the United States Court of Appeals Eleventh Circuit case No. 10-10584 (D.C. Docket No. 1:09-cv-03356-ODE) stating: "As of July

42

30, 2015, The Bankruptcy Court Case is still pending.  However, Appellee Thornburg no longer

has an interest in the loan therein.  Thus, the pendency of the Bankruptcy Case no longer

requires a stay of the Appeal and the Appellees ask that the stay be lifted" which the court

granted on September 23, 2015; less than six months prior to filing the Suggestion of

Bankruptcy in Plaintiff's Case No. 15CV12019. (Reason, TMST Home Loans, Inc.'s mortgage

servicing portfolio had been sold in 2010).

137.    On February 14, 2018, Plaintiff filed a styled: Action to Renew Complaint for

Cancellation of a Fraudulent Deed; Recovery of Real Property; and Recovery of Damages not

Associated with the Value of the Property at Issue, which was dismissed on April 18, 2018.

The trial court deemed the final order in Case No. 15CV12019 entirely foreclosed the

Appellant/Plaintiff right to re-file a claim against a proper defendant in the case.

138.    The Appellant /Plaintiff filed an appeal, No. A18A2008, of the dismissal of Case

No.18CV2135 to the Court of Appeals of Georgia July 15, 2018. On February 25, 2019, the

Court of Appeals of Georgia reversed the dismissal of this action.  The Remittitur of record was

filed on March 22, 2019.

139.    On February 25, 2019, the Clerk of Superior Court DeKalb County Georgia sent

a Notice informing the Appellant/Plaintiff the case was placed on the trial Court's April 1, 2019

Civil Peremptory Calendar at 9:30AM before the Honorable Judge in the DeKalb Court

regarding service issues.

140.    On April 1, 2019, the Plaintiff appeared before  the Judge where the Court

informed the Appellant/Plaintiff according to the file, Plaintiff had not filed proof of a valid

service.  The service issues touted by the Court was the service to an unidentified "White male"

in Santa Fe, New Mexico on March 16, 2018 and the fact the Plaintiff had not made any

additional attempts to serve the Defendant's Corporation, as required by Georgia law citing O.C.G.A. § 14-2-504 and O.C.G.A. § 9-11-4(e) on a case the trial court itself closed approximately two months after the refiling of the renewed case and was under appeal (A18A2008) for the next eight to nine months.

141.    The court did not afford the Plaintiff the opportunity to defend the service, in which O.C.G.A. section 9-11-4(d)(7)" allows for service by "leaving copies" or correct the service before dismissing.

142.    The Plaintiff alleges the description of the person who refused to be served and give his name as reported on the summons, fit the description of the Trustee, who as Director of TMHL should have been on site that date in Santa Fe, New Mexico for the scheduled annual meeting on March 16, 2018 reported to the Secretary of State, the date the summons and complaint was delivered.   The Courts sided with the trial Judge.

143.    The third "Final Order" under ongoing O.C.G.A. § 9–11–54(b) proceedings since 2015, dismissed the action, under O.C.G.A. § 9–11–41(b) (c),  a matter in abatement under O.C.G.A. § 9–11–12(b)(5) is a dismissal without prejudice, therefore could not have been on the merits of the complaint, thus cannot be res judicata in the present action.

144.    A dismissal for failure of the plaintiff to prosecute does not operate as an adjudication upon the merits; and any other dismissal under this subsection and any dismissal not provided for in this Code section, other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, does operate as an adjudication upon the merits unless the court in its order for dismissal specifies otherwise.

**Count I**
**Bankruptcy Fraud/Lack Of Standing**
**Failure to Bring Claim in the Name of the Real Party In Interest**
**18 U.S.C. §157 (3); O.C.G.A. § 16-14-4 (b); § 16-8-102 (5); GRMA 13 § 7-1-1013(6)**

145.    The allegations set forth above in paragraphs one through 144 of this Complaint are realleged and incorporated as if fully set forth in this paragraph.

146.    At no time relevant to the allegations herein was the named Creditor, Defendant TMHL the actual holder and the lawful owner of the mortgage believed to be originally signed by the Plaintiff on September 30, 2002.

147.    In the bankruptcy courts, procedure is governed by the Federal Rules of Bankruptcy and Civil Procedure. Procedure has an undeniable impact on the issue of who can assert a claim as a holder, because pleading and standing issues which arise in the context of our federal court system.

148.    Failed according to F. R. Civ. Pro. 17, to bring an action to be prosecuted in the name of the real party in interest.

149.    The named Creditor, Defendant TMHL or their agent/law firm MR failed to file a proof of claim to satisfy the requirements of Bankruptcy Rule 3001(c)(1); to include evidence of security interest perfection; or as required per Bankruptcy Rule 9011 a true copy of the original Note attached to the proof of claim or an itemization of fees with proofs of claims.

150.    As shown, the named Creditor, Defendant TMHL, is/was not the real party in interest and lacked standing to file the automatic stay in the instant claim.

151.    As shown, the named Creditor, Defendant TMHL was not the actual holder and lawful owner or assignee of the mortgage, it had no security interest, and thusly but for had no right to seek to collect money from Plaintiff or their bankruptcy estate.

152.    The Defendants' acting individually or together, had no constitutional standing to file a claim as Creditor or otherwise participate in Plaintiff's Chapter 13 proceeding as the Creditor.

45

153.     In connection with each filing of a claim, all of the Defendants, separately or in concert with one another, knowingly and willingly made falsities, misrepresentations, and omissions to the Court that were materially misleading and fictitious.

154.     Knowingly and willingly misrepresented the Real-Party-In Interest /Holder-in-Due-Course through the foreclosure process via the bankruptcy court on property commonly known as 1525 High Haven Court, Atlanta, GA 30329 at a time they are alleged not to have been the beneficial owner of said property in direct and proximate injuries to Plaintiff in real property and concrete business losses.

155.     Knowingly and willfully filed and caused to be filed with the Official Registrar of Deeds to the Superior Court, DeKalb County of Georgia, documents said Defendants knew to contain deliberate misstatements but for caused distinct, direct, proximate injuries to Plaintiff in real property and concrete business losses.

156.     Knowingly and willfully made fraudulent representation offered in evidence alleged falsified, fabricated, and fraudulent documents in the course of bankruptcy, foreclosure, and eviction proceedings with regard to registered lands and all interest therein with actual intent to dispossess Plaintiff from property in direct and proximate injuries to Plaintiff in real property and concrete business losses.

157.     Assertions the good-faith duty upon a mortgagee to conduct and exercise fairly a just foreclosure auction under the Power of Sale in the Deed to Secure Debt was not adhered to, resulting in unlawful acts to commit this alleged extrinsic fraud as gravamen but for caused distinct, direct, and proximate injuries to Plaintiff in real property and concrete business losses.

158.     In connection with the bankruptcy fraud, all of the Defendants, separately or in concert with one another, engaged in a scheme to defraud, acting knowingly or in deliberate

ignorance of, or with conscious disregard of the truth, made false and misleading representations and omissions of material facts to the Courts and Government Agencies.

159.     In pursuit of this fraudulent scheme, the Defendants repeatedly engaged in dishonest and deceitful actions but for deprived the Plaintiff of something of value causing distinct, direct, and proximate injuries to Plaintiff in real property and concrete business losses.

160.     In connection with each Act, all of the Defendants, separately or in concert with one another, had an intent to defraud Plaintiff, acting with an intent to deceive and in contemplation of actual harm to the property interests of the Plaintiff.  The Defendants knew at that time the consequence of their fraudulent scheme if it were successful, would be injurious to Plaintiff and consciously intended for this injury to occur.

161.     For each violation for bankruptcy fraud, lack of standing, and failure to bring claim in the name of the real party in interest, the Defendants knew at that time the consequence of their fraudulent scheme, if it were successful would be injurious to the Plaintiff, and consciously intended for the injury to occur.

162.     The Defendants are jointly, vicariously, and severally liable for civil penalties up to the maximum amount authorized under 18 U.S.C. §157 (3); O.C.G.A. § 16-14-4 (b); § 16-8-102 (5); and GRMA 13 § 7-1-1013(6).

**WHEREFORE**, for the foregoing reasons, the Plaintiff Althea Miley respectfully requests the following relief:

A.     That summonses and process be issued requiring these Defendants to appear as provided by law to answer the allegations of this Complaint;

B.     That Plaintiff have a TRIAL BY JURY of all issues so triable;

47

C. The Court exercises its equitable power to cancel allegedly fraudulent

Assignment and its associated Deed under Power;

D. Recovery of Property;

E. Order Defendants to give up property gained through RICO violation;

F. That Plaintiff recover from Defendants the following: special damages for losses

not associated with the value of the property namely: 1) Loss of use of property; 2) Loss of

Home Business; 3) Loss of Personal Property for treble damages to be determined at trial;

G. The amount of all such compensatory damages to be proven at trial and

determined by the enlightened conscience of a jury;

H. That Plaintiff recover punitive damages against the Defendants in amounts to be

determined by the enlightened conscience of a jury;

I. That Plaintiff have and recover all damages to which they are entitled

under Georgia law; and

J. That Plaintiff have all such other and further relief as this Court deems

just and appropriate.

## Count II
### Foreclosure Fraud and Deceit
### Creation of Fraudulent Documents and Instruments
### Conveying Interest in Real Property Made to Influence the Actions of the Courts
### Fraud in Connection with Title Registration in the Official County Registrar of Deeds
### 18 U.S.C. §157 (3); O.C.G.A. § 16-14-4 (b); § 16-8-102 (5); GRMA 13 § 7-1-1013(6)

163. The allegations set forth above in paragraphs one through 144 of this Complaint

are realleged and incorporated as if fully set forth in this paragraph.

164. The Defendants knowingly fabricated an assignment of mortgage to

present to the court and such act of presenting a false fabricated document was committed.

for the purpose of enticing the reliance of the Court the Chapter 13 Trustee, the Plaintiff,

48

other creditors, and courts.

165.   The Defendants in concert of each other knowingly and willfully submitted an
Assignment to the Court which was neither indorsed to Defendant TMHL nor was it validly
assigned to Defendant TMHL.

166.   The Defendants in concert of each other knowingly and willfully falsified
documents to commit the offense of foreclosure fraud but for caused distinct, direct, and
proximate injuries to Plaintiff in real property and concrete business losses.

167.   The Defendants in concert of each other is alleged to have concocted, prepared,
and provided a purported authoritative, fabricated, colorable, and illegal Assignment and Deed
under Power to justify the foreclosure but for caused distinct, direct, and proximate injuries to
Plaintiff in real property and concrete business losses.

168.  Defendants in concert of each other  provided convincing verified attestation by
notarization of the alleged fabricated documents which were known or should have been known
to be false at the time said attestation were made but for caused distinct, direct, and proximate
injuries to Plaintiff in real property and concrete business losses.

169.   Defendants in concert of each other knowingly and willfully assisted in making a
false instrument claiming authority to enforce a foreclosure but for caused distinct, direct, and
proximate injuries to Plaintiff in real property and concrete business losses.

170.   Assertion, the good-faith duty upon a mortgagee to conduct and exercise fairly a
just foreclosure auction under the Power of Sale in the Deed to Secure Debt was not adhered to,
resulting in unlawful acts to commit this alleged extrinsic fraud as gravamen but for caused
distinct, direct, and proximate injuries to Plaintiff in real property and concrete business losses.

171.   In connection with each Act, all of the Defendants, separately, or in concert

49

with one another, had an intent to defraud Plaintiff, acting with an intent to deceive ,and in contemplation of actual harm to the property interests of the Plaintiff.

172.    The Defendants knew at that time the consequence of their fraudulent scheme if it were successful, would be injurious to Plaintiff and consciously intended for this injury to occur.

173.    For each violation for bankruptcy fraud, foreclosure fraud, deceit, creation of fraudulent documents, and instruments, the Defendants are jointly, vicariously, and severally liable for civil penalties up to the maximum amount authorized under 18 U.S.C. §157 (3); O.C.G.A. § 16-14-4 (b);  § 16-8-102 (5); and GRMA 13 § 7-1-1013(6).

**WHEREFORE**, for the foregoing reasons, the Plaintiff Althea Miley respectfully requests the following relief:

A.    That summonses and process be issued requiring these Defendants to appear as provided by law to answer the allegations of this Complaint;

B.    That Plaintiff have a TRIAL BY JURY of all issues so triable;

C.    The Court exercises its equitable power to cancel allegedly fraudulent Assignment and its associated Deed under Power;

D.    Recovery of Property;

E.    Order Defendants to give up property gained through RICO violation;

F.    That Plaintiff recover from Defendants the following: special damages for losses not associated with the value of the property namely: 1) Loss of use of property; 2) Loss of Home Business; 3) Loss of Personal Property for treble damages to be determined at trial;

G.    The amount of all such compensatory damages to be proven at trial and determined by the enlightened conscience of a jury;

50

H. That Plaintiff recover punitive damages against the Defendants in amounts to be

determined by the enlightened conscience of a jury;

I. That Plaintiff have and recover all damages to which they are entitled

under Georgia law; and

J. That Plaintiff have all such other and further relief as this Court deems

just and appropriate.

## Count III
### TMHL as Mortgage Servicer Fraudulent Conduct
### Misrepresentations about the Loan Characteristics
### False, Fictitious, Misleading, Omissions, and Concealment in Fraudulent Statements
### 18 U.S.C. §157 (3); O.C.G.A. § 16-14-4 (b); § 16-8-102 (5); GRMA 13 § 7-1-1013(6).

174. The allegations set forth above in paragraphs one through 144 of this Complaint

are realleged and incorporated as if fully set forth in this paragraph.

175. The Defendants knowingly omitted material, crucial information, and facts from

the court regarding the Note and Assignment of Mortgage at issue.

176. In connection with subject property, all of the Defendants, separately or in

concert with one another, knowingly executed a scheme or artifice intended to obtain, by means

of materially false and fraudulent pretenses, and representations, acquisition of subject property,

failed to disclose as mandated the subject property was owned by and under the custody and

control of a securitized Trust.

177. TMHL as a mortgage servicer knew the loan characteristic were material to

Borrowers and that Borrowers relied on the integrity of the information that TMHL provided;

enticing Borrower reliance to their detriment on the Servicer when making business decisions as

to their home loan.

51

178.     TMHL as a mortgage servicer knowingly and willfully by concealment means, deliberately hid and suppressed, with an intention to deceive and defraud Plaintiff of a material fact which they were legally bound to disclose at all times to properly identify their representative capacity as servicer, purposely failed to do so but for caused distinct, direct, and proximate injuries to Plaintiff in real property and concrete business losses.

179.     In connection with each false and misleading representations and omissions, all of the Defendants, separately or in concert with one another, had an intent to defraud the Plaintiff ; acting with an intent to deceive; and in contemplation of actual harm to the property interests of the Plaintiff but for caused distinct, direct, and proximate injuries to Plaintiff in real property and concrete business losses.

180.     When TMHL and its Associates made these representations and omissions, the Defendants knew that their statements were false, or else they were aware of a high probability that their statements were false. The Defendants also knew at that time the consequence of their fraudulent scheme, if it were successful, would be injurious to the Plaintiff, and consciously intended for this injury to occur.

181.     In connection with each Act, all of the Defendants, separately or in concert with one another, had an intent to defraud Plaintiff, acting with an intent to deceive and in contemplation of actual harm to the property interests of the Plaintiff, but for caused distinct, direct, and proximate injuries to Plaintiff in real property and concrete business losses.

182.     The Defendants knew at that time the consequence of their fraudulent scheme if it were successful, would be injurious to Plaintiff and consciously intended for this injury to occur but for caused distinct, direct, and proximate injuries to Plaintiff in real property and concrete business losses.

52

183.    For each violation for false, fictitious, misleading, omissions, and concealment in fraudulent statements, the Defendants are jointly, vicariously, and severally liable for civil penalties up to the maximum amount authorized under 18 U.S.C. §157 (3); O.C.G.A. § 16-14-4 (b); § 16-8-102 (5); and GRMA 13 § 7-1-1013(6).

**WHEREFORE**, for the foregoing reasons, the Plaintiff Althea Miley respectfully requests the following relief:

A.    That summonses and process be issued requiring these Defendants to appear as provided by law to answer the allegations of this Complaint;

B.    That Plaintiff have a TRIAL BY JURY of all issues so triable;

C.    The Court exercises its equitable power to cancel allegedly fraudulent Assignment and its associated Deed under Power;

D.    Recovery of Property;

E.    Order Defendants to give up property gained through RICO violation;

F.    That Plaintiff recover from Defendants the following: special damages for losses not associated with the value of the property namely: 1) Loss of use of property; 2) Loss of Home Business; 3) Loss of Personal Property for treble damages to be determined at trial;

G.    The amount of all such compensatory damages to be proven at trial and determined by the enlightened conscience of a jury;

H.    That Plaintiff recover punitive damages against the Defendants in amounts to be determined by the enlightened conscience of a jury;

I.    That Plaintiff have and recover all damages to which they are entitled under Georgia law; and

J.    That Plaintiff have all such other and further relief as this Court deems

just and appropriate.

## Count IV
## Mail Fraud
## 18 U.S.C. § 1341
## Scheme to Defraud.
## 18 U.S.C. §157 (3); O.C.G.A. § 16-14-4 (b); § 16-8-102 (5); GRMA 13 § 7-1-1013(6).

184.    The allegations set forth above in paragraphs one through 144 of this Complaint are realleged and incorporated as if fully set forth in this paragraph

185.    In connection with each fraud allegation, all of the Defendants, separately or in concert with one another, knowingly used the mails in pursuit of their scheme to defraud when they, *inter alia*, caused to be deposited for delivery by the United States Postal Service, or by a private or commercial interstate carrier, *inter alia*, (1) bankruptcy documents, (2) foreclosure documents, (3) confirmations, and (4) account statements that were mailed to Plaintiff from November 2006 to March 2009. These communications were an essential part of Defendant Burns TMHL as mortgage servicers' scheme to defraud.

186.    The Defendants' acts of mail fraud but for caused distinct, direct, and proximate injuries to Plaintiff in real property and concrete business losses resulted in pecuniary loss to the Plaintiff.

187.    In connection with each act of mail fraud, the Defendants derived pecuniary gain from their acts of mail fraud.

188.    In connection with each Act, all of the Defendants, separately or in concert with one another, had an intent to defraud Plaintiff, acting with an intent to deceive and in contemplation of actual harm to the property interests of the Plaintiff;

189.    The Defendants knew at that time the consequences of their fraudulent scheme if it were successful, would be injurious to Plaintiff and consciously intended for this injury to

occur but for caused distinct, direct, and proximate injuries to Plaintiff in real property and concrete business losses.

190.    For each violation of 18 U.S.C. § 1341 each Defendant are jointly, vicariously, and severally liable for civil penalties up to the maximum amount authorized under 18 U.S.C. §157 (3); O.C.G.A. § 16-14-4 (b); 16-8-102 (5) and GRMA 13 § 7-1-1013(6).

**WHEREFORE**, for the foregoing reasons, the Plaintiff Althea Miley respectfully requests the following relief:

A.    That summonses and process be issued requiring these Defendants to appear as provided by law to answer the allegations of this Complaint;

B.    That Plaintiff have a TRIAL BY JURY of all issues so triable;

C.    The Court exercises its equitable power to cancel allegedly fraudulent Assignment and its associated Deed under Power;

D.    Recovery of Property;

E.    Order Defendants to give up property gained through RICO violation;

F.    That Plaintiff recover from Defendants the following: special damages for losses not associated with the value of the property namely: 1) Loss of use of property; 2) Loss of Home Business; 3) Loss of Personal Property for treble damages to be determined at trial;

G.    The amount of all such compensatory damages to be proven at trial and determined by the enlightened conscience of a jury;

H.    That Plaintiff recover punitive damages against the Defendants in amounts to be determined by the enlightened conscience of a jury;

I.    That Plaintiff have and recover all damages to which they are entitled under Georgia law; and

55

J.      That Plaintiff have all such other and further relief as this Court deems just and appropriate.

## Count V
## Wire Fraud
## 18 U.S.C. § 1343
## Scheme to Defraud
## 18 U.S.C. §157 (3); O.C.G.A. § 16-14-4 (b); § 16-8-102 (5); GRMA 13 § 7-1-1013(6).

191.    The allegations set forth above in paragraphs one through 144 of this Complaint are realleged and incorporated as if fully set forth in this paragraph.

192.    In connection with each wire fraud, all of the Defendants, acting separately or in concert with one another, committed violations of 18 U.S.C. § 1343 affecting the Plaintiff, for which they are subject to a civil penalty.

193.    In connection with each wire fraud, all of the Defendants, separately or in concert with one another, knowingly used the interstate wires in pursuit of their scheme to defraud when they, *inter alia*, (1) executed an interstate wire transfer of funds when the Defendant fraudulently sold Plaintiff's loan to Chase or the originator re-securitizing the loan for their own behalf; (2) electronically filed documents with the Recorders Office; (3) electronically transmitted information regarding the transaction to vendors; and (4) communicated via telephone, email, to acquire and exchange knowledge regarding the transactions by interstate wire. These communications were at least incidental to an essential part of TMHL' scheme to defraud.

194.    In connection with each wire fraud, all of the Defendants, separately or in concert with one another, knowingly used the interstate wires to obtain moneys, funds, credits, assets, securities, and other property fraudulent owned and under the control of TMHL by means of false and fraudulent pretenses, and representations.

195. In connection with each wire fraud, all of the Defendants, separately or in concert with one another, knowingly used the interstate wires to participate, shared in, and receive directly or indirectly any money, profit, property, and benefits through one or more transactions, loans, commissions, contracts, or other acts of such financial institutions by wire.

196. In connection with each subject wire fraud, the Defendants' acts of wire fraud affected the Plaintiff but for caused distinct, direct, and proximate injuries to Plaintiff in real property and concrete business losses.

197. In connection with each subject wire fraud, the Defendants' acts of wire fraud actually and proximately resulted in pecuniary loss to the Plaintiff.

198. In connection with each wire fraud, the Defendants derived pecuniary gain from their acts of wire fraud.

199. In connection with each Act, all of the Defendants, separately or in concert with one another, had an intent to defraud Plaintiff, acting with an intent to deceive and in contemplation of actual harm to the property interests of the Plaintiff, but for caused distinct, direct, and proximate injuries to Plaintiff in real property and concrete business losses.

200. The Defendants knew at that time the consequence of their fraudulent scheme if it were successful, would be injurious to Plaintiff and consciously intended for this injury to occur.

201. For each violation of 18 U.S.C. § 1343 as to each wire fraud, each Defendant are jointly, vicariously, and severally liable for civil penalties up to the maximum amount authorized under 18 U.S.C. §157 (3); O.C.G.A. § 16-14-4 (b); 16-8-102 (5); and GRMA 13 § 7-1-1013(6).

57

**WHEREFORE**, for the foregoing reasons, the Plaintiff Althea Miley respectfully requests the following relief:

A.    That summonses and process be issued requiring these Defendants to appear as provided by law to answer the allegations of this Complaint;

B.    That Plaintiff have a TRIAL BY JURY of all issues so triable;

C.    The Court exercises its equitable power to cancel allegedly fraudulent Assignment and its associated Deed under Power;

D.    Recovery of Property;

E.    Order Defendants to give up property gained through RICO violation;

F.    That Plaintiff recover from Defendants the following: special damages for losses not associated with the value of the property namely: 1) Loss of use of property; 2) Loss of Home Business; 3) Loss of Personal Property for treble damages to be determined at trial;

G.    The amount of all such compensatory damages to be proven at trial and determined by the enlightened conscience of a jury;

H.    That Plaintiff recover punitive damages against the Defendants in amounts to be determined by the enlightened conscience of a jury;

I.    That Plaintiff have and recover all damages to which they are entitled under Georgia law; and

J.    That Plaintiff have all such other and further relief as this Court deems just and appropriate.

Dated: February 9, 2021

Althea Miley, Pro *se*

58

P.O. Box 244126
Atlanta, GA 30324
(404) 786-6384
mileyatlanta@aol.com

# EXHIBITS

**EXHIBIT DC 2-A**

Log In | Contact Us

# MARKETPLACE

CLICK HERE TO PLACE YOUR
**CLASSIFIED AD**

Services   Announcements   Jobs   Stuff   Rental Homes   Homes-Real Estate   Recreation   Wheels   Legals

Home › Legals › Foreclosures › (ROSE) NOTICE OF SALE UNDER POWER GEORGIA, FO...

## FC ▓▓▓▓ ▓▓▓▓▓

*Search...*   All Categ ∨  [                ]

**Description:**
(ROSE) NOTICE OF SALE UNDER POWER GEORGIA, FORSYTH COUNTY By
virtue of a Power of Sale contained in that certain Security Deed from ▓▓▓▓▓▓,
▓▓▓▓ ▓▓▓▓ ▓▓▓▓ to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC. AS NOMINEE FOR BANCMORTGAGE FINANCIAL CORP., dated July 25, 2002,
recorded August 9, 2002, in Deed Book 2388, Page 553 , ▓▓▓▓▓ County, Georgia
Records, said Security Deed having been given to secure a Note of even date in the
original principal amount of Four Hundred Fifty-Two Thousand and 00/100 dollars
($452,000.00), with interest thereon as provided for therein, said Security Deed having
been last sold, assigned and transferred to Deutsche Bank National Trust Company,
as Trustee, on behalf of the holders of the Thornburg Mortgage Securities Trust 2002-4
Mortgage Pass-Through Certificates, Series 2002-4, there will be sold at public outcry
to the highest bidder for cash at the ▓▓▓▓▓ County Courthouse, within the legal hours
of sale on the first Tuesday in March, 2020, all property described in said Security
Deed including but not limited to the following described property: ALL THAT TRACT
OR PARCEL OF LAND LYING AND BEING IN LAND LOTS ▓▓ AND ▓▓ OF THE
▓▓ DISTRICT, 1ST SECTIN, ▓▓▓▓▓ COUNTY, GEORGIA, BEING LOT 83,
▓▓▓▓▓▓▓ SUBDIVISION, PHASE I, AS PER PLAT RECORDED IN PLAT BOOK
▓▓, PAGE 2▓▓▓▓0, ▓▓▓▓▓ COUNTY, GEORGIA RECORDS, SAID PLAT BEING
INCORPORATED HEREIN AND MADE REFERENCE HERETO. Said legal description
being controlling, however the property is more commonly known as ▓▓▓▓▓▓▓
▓▓▓▓ ▓▓▓▓ ▓▓▓▓▓▓ ▓▓▓▓▓▓▓. The indebtedness secured by said Security Deed
has been and is hereby declared due because of default under the terms of said
Security Deed. The indebtedness remaining in default, this sale will be made for the
purpose of paying the same, all expenses of the sale, including attorneys' fees (notice
to collect same having been given) and all other payments provided for under the
terms of the Security Deed. Said property will be sold on an "as-is" basis without any
representation, warranty or recourse against the above-named or the undersigned.
The sale will also be subject to the following items which may affect the title: any
outstanding ad valorem taxes (including taxes which are a lien, whether or not now
due and payable); the right of redemption of any taxing authority; matters which would
be disclosed by an accurate survey or by an inspection of the property; all zoning
ordinances; assessments; liens; encumbrances; restrictions; covenants, and any other
matters of record superior to said Security Deed. To the best of the knowledge and
belief of the undersigned, the owner and party in possession of the property is
▓▓▓▓▓ ▓▓▓▓ ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓, or tenants(s). The sale will be conducted subject
(1) to confirmation that the sale is not prohibited under the U.S. Bankruptcy Code and
(2) to final confirmation and audit of the status of the loan with the holder of the
Security Deed. Please note that, pursuant to O.C.G.A. SS 44-14-162.2, you are not
entitled by law to an amendment or modification of the terms of your loan. The entity
having full authority to negotiate, amend or modify all terms of the loan (although not
required by law to do so) is: Select Portfolio Servicing, Inc., Loss Mitigation Dept., 3217
S. Decker Lake Dr., Salt Lake City, UT 84119, Telephone Number: 888-818-6032.
DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE, ON BEHALF OF
THE HOLDERS OF THE THORNBURG MORTGAGE SECURITIES TRUST 2002-4
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2002-4 as Attorney in Fact
for ▓▓▓▓▓ ▓▓▓▓ ▓▓▓▓ ▓▓▓▓ THE BELOW LAW FIRM MAY BE HELD TO BE
ACTING AS A DEBT COLLECTOR, UNDER FEDERAL LAW. IF SO, ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. Attorney Contact:
Rubin Lublin, LLC, 3145 Avalon Ridge Place, Suite 100, Peachtree Corners, GA 30071
Telephone Number: (877) 813-0992 Case No. SPS-13-07425-3 Ad Run Dates
02/05/2020, 02/12/2020, 02/19/2020, 02/26/2020 rlselaw.com/property-listing 47391,
2/5,12, 19, 26

# EXHIBIT DC 2-B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | ) BANKRUPTCY CASE |
| | ) |
| ALTHEA LORRAINE MILEY | ) NO. 06-74027 |
| | ) |
| Debtor | ) |
| | ) |

| | |
|---|---|
| MORTGAGE ELECTRONIC | ) JUDGE: JAMES E. MASSEY |
| REGISTRATION SYSTEMS, INC., AS | ) |
| NOMINEE FOR CENLAR, FSB | ) |
| | ) |
| Movant | ) |
| | ) CHAPTER 13 |
| vs. | ) |
| | ) |
| ALTHEA LORRAINE MILEY | ) |
| NANCY J. WHALEY, Trustee | ) |
| | ) |
| Respondents | ) |
| | ) |

### MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Movant and shows this Court the following:

1.

This is a Motion under Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property.

2.

Movant is the holder of record of a Security instrument

which describes certain real property in which Debtor claims an
interest. Said real property is security for a promissory note
held by Movant and is commonly known as 1525 High Haven Court,
Atlanta, Georgia.

3.

Debtor has defaulted in making payments which have come due
since this case was filed. Through the month of February 2007,
three (3) payments have been missed.

4.

The unpaid principal balance is $226,113.31, and interest is
due thereon in accordance with the Note.

5.

Because of the Debtor's default and clear inability to make
all required payments, Movant is not adequately protected and shows
that there is cause for relief from the automatic stay.

6.

Because the Security Instrument so provides, Debtor is
responsible for Movant's reasonable attorney's fees.

WHEREFORE, Movant prays for an Order lifting the automatic
stay, authorizing Movant to exercise its rights under its Note,
Security Instrument and appropriate state statutes, including, but

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CASE NO. 06-74027 |
| ALTHEA LORRAINE MILEY | : | |
| | : | CHAPTER 13 |
| Debtor | : | |
| | : | JUDGE: JAMES E. MASSEY |
| | : | |
| | : | |
| | : | |
| MORTGAGE ELECTRONIC REGISTRATION | : | |
| SYSTEMS, INC., AS NOMINEE FOR | : | |
| CENLAR, FSB, | : | |
| | : | |
| Movant | : | CONTESTED MATTER |
| | : | |
| v. | : | |
| | : | |
| ALTHEA LORRAINE MILEY | : | |
| NANCY J. WHALEY, Trustee | : | |
| | : | |
| Respondents | : | |

NOTICE OF HEARING

PLEASE TAKE NOTICE that Mortgage Electronic Registration Systems, Inc., as Nominee for Cenlar, FSB  has filed a Motion for Relief from the Automatic Stay and related papers with the Court seeking an Order Granting Motion for Relief from Stay.

PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the Motion for Relief from the Automatic Stay in Courtroom 1404, 75 Spring Street, Atlanta, Georgia 30303 at 9:30 A.M. on March 7, 2007.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk, United States Bankruptcy Court, 75 Spring Street, Suite 1340, Atlanta, Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: 2/7/2007

s/
Michael J. McCormick
Bar No. 485749
Counsel for Movant
McCalla Raymer, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
(770) 643-2148

File No. 52044606-2

IN THE UNITED STATES BANKRUPTCY COURT **EXHIBIT DC 2-C**
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

In Re:                                              Chapter 13
Althea Lorraine Miley                               Case No.: A06-74027-JEM
1525 High Haven Court NE
Atlanta, GA 30329

SSN (1): XXX-XX-4469

## TRUSTEE'S FINAL REPORT AND ACCOUNT

Nancy J. Whaley, Trustee for the above case, submits the following final report and account of the administration of the estate
pursuant to 11 U.S.C. § 1302(b)(1). The Trustee declares under penalty of perjury as follows:

The case was filed on November 04, 2006.
The plan has not been confirmed.
The case was DISMISSED PRIOR TO CONFIRMATION on February 15, 2007.
Number of months from filing to last payment: 2
Number of months case was pending: 3
Dividend to unsecured creditors: 100.00%

**RECEIPTS**:
Total paid by or on behalf of the debtor(s): $1,170.00

**EXPENSES OF ADMINISTRATION DISBURSED BY TRUSTEE:**

**ATTORNEY FEE:**
CLARK & WASHINGTON
Fees paid by debtor: $0.00
Fees paid through plan: $1,119.69
Total Attorney's Fees: $1,119.69

**TRUSTEE FEE:**
Amount Paid: $50.31

## DISBURSEMENTS TO CREDITORS:

### DEBTOR REFUND:

| CREDITOR NAME | CLASS | CLAIM SCHEDULED | CLAIM ASSERTED | PRINCIPAL PAID | INTEREST PAID | PRINCIPAL + INTEREST |
|---|---|---|---|---|---|---|
| Althea Lorraine Miley | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| DEBTOR REFUND TOTALS: | | $0.00 | $0.00 | $0.00 | $0.00 | **$0.00** |

### PRIORITY TAXES:

| CREDITOR NAME | CLASS | CLAIM SCHEDULED | CLAIM ASSERTED | PRINCIPAL PAID | INTEREST PAID | PRINCIPAL + INTEREST |
|---|---|---|---|---|---|---|
| INTERNAL REVENUE SERVICE | 2 | $2,243.00 | $5,331.72 | $0.00 | $0.00 | $0.00 |
| PRIORITY TAXES TOTALS: | | $2,243.00 | $5,331.72 | $0.00 | $0.00 | **$0.00** |

### MORTGAGE ARREARS:

| CREDITOR NAME | CLASS | CLAIM SCHEDULED | CLAIM ASSERTED | PRINCIPAL PAID | INTEREST PAID | PRINCIPAL + INTEREST |
|---|---|---|---|---|---|---|
| CENLAR | M | $6,217.00 | $9,423.13 | $0.00 | $0.00 | $0.00 |
| COUNTRYWIDE HOME LOANS IN | M | $3,413.00 | $2,724.86 | $0.00 | $0.00 | $0.00 |
| MORTGAGE ARREARS TOTALS: | | $9,630.00 | $12,147.99 | $0.00 | $0.00 | **$0.00** |

### UNSECURED:

| CREDITOR NAME | CLASS | CLAIM SCHEDULED | CLAIM ASSERTED | PRINCIPAL PAID | INTEREST PAID | PRINCIPAL + INTEREST |
|---|---|---|---|---|---|---|
| BANK OF AMERICA | U | $6,664.66 | $10,684.87 | $0.00 | $0.00 | $0.00 |
| BANK OF AMERICA N.A. | U | $8,000.00 | $7,215.25 | $0.00 | $0.00 | $0.00 |
| BANK OF AMERICA N.A. | U | $10,000.00 | $9,455.20 | $0.00 | $0.00 | $0.00 |
| DISCOVER FINANCIAL SERVICES | U | $5,362.72 | $5,467.54 | $0.00 | $0.00 | $0.00 |
| ECAST SETTLEMENT CORPORAT | U | $3,818.96 | $3,949.92 | $0.00 | $0.00 | $0.00 |
| WACHOVIA BANK, N.A. | U | $700.00 | $538.36 | $0.00 | $0.00 | $0.00 |
| WELLS FARGO FINANCIAL GA., I | U | $3,061.52 | $3,274.75 | $0.00 | $0.00 | $0.00 |
| BELLSOUTH REGIONAL BANKRU | U | $415.40 | $378.23 | $0.00 | $0.00 | $0.00 |
| BANK OF AMERICA N.A. | U | $0.00 | $7,215.25 | $0.00 | $0.00 | $0.00 |
| ECAST SETTLEMENT CORPORAT | U | $0.00 | $4,358.48 | $0.00 | $0.00 | $0.00 |
| UNSECURED TOTALS: | | $38,023.26 | $52,537.85 | $0.00 | $0.00 | **$0.00** |

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**EXHIBIT DC 2-D**

In Re:

ALTHEA LORRAINE MILEY
1525 HIGH HAVEN COURT
ATLANTA, GA 30329

Chapter 13
Case No.: A07-65438-JEM

SSN (1): XXX-XX-4469

## TRUSTEE'S FINAL REPORT AND ACCOUNT

Nancy J. Whaley, Trustee for the above case, submits the following final report and account of the administration of the estate pursuant to 11 U.S.C. § 1302(b)(1). The Trustee declares under penalty of perjury as follows:

The case was filed on April 02, 2007.
The plan has not been confirmed.
The case was DISMISSED PRIOR TO CONFIRMATION on June 21, 2007.
Number of months from filing to last payment: No Payments Made
Number of months case was pending: 2
Dividend to unsecured creditors: 0.00%

**RECEIPTS**:
Total paid by or on behalf of the debtor(s): $0.00

**EXPENSES OF ADMINISTRATION DISBURSED BY TRUSTEE**:

**ATTORNEY FEE**:

CLARK & WASHINGTON

Fees paid by debtor: $0.00
Fees paid through plan: $0.00
Total Attorney's Fees: $0.00

**TRUSTEE FEE**:

Amount Paid: $0.00

## DISBURSEMENTS TO CREDITORS:

### DEBTOR REFUND:

| CREDITOR NAME | CLASS | CLAIM SCHEDULED | CLAIM ASSERTED | PRINCIPAL PAID | INTEREST PAID | PRINCIPAL + INTEREST |
|---|---|---|---|---|---|---|
| ALTHEA LORRAINE MILEY | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| DEBTOR REFUND TOTALS: | | $0.00 | $0.00 | $0.00 | $0.00 | **$0.00** |

### PRIORITY TAXES:

| CREDITOR NAME | CLASS | CLAIM SCHEDULED | CLAIM ASSERTED | PRINCIPAL PAID | INTEREST PAID | PRINCIPAL + INTEREST |
|---|---|---|---|---|---|---|
| INTERNAL REVENUE SERVICE | 2 | $5,332.00 | $7,796.67 | $0.00 | $0.00 | $0.00 |
| GEORGIA DEPARTMENT OF REVI | 2 | $0.00 | $1,033.12 | $0.00 | $0.00 | $0.00 |
| PRIORITY TAXES TOTALS: | | $5,332.00 | $8,829.79 | $0.00 | $0.00 | **$0.00** |

### MORTGAGE ARREARS:

| CREDITOR NAME | CLASS | CLAIM SCHEDULED | CLAIM ASSERTED | PRINCIPAL PAID | INTEREST PAID | PRINCIPAL + INTEREST |
|---|---|---|---|---|---|---|
| UNITED GUARANTY RESIDENTIA | M | $6,000.00 | $8,482.50 | $0.00 | $0.00 | $0.00 |
| CENLAR | M | $15,924.00 | $26,266.63 | $0.00 | $0.00 | $0.00 |
| MORTGAGE ARREARS TOTALS: | | $21,924.00 | $34,749.13 | $0.00 | $0.00 | **$0.00** |

### UNSECURED:

| CREDITOR NAME | CLASS | CLAIM SCHEDULED | CLAIM ASSERTED | PRINCIPAL PAID | INTEREST PAID | PRINCIPAL + INTEREST |
|---|---|---|---|---|---|---|
| WELLS FARGO FINANCIAL GA., I | U | $3,274.75 | $3,525.22 | $0.00 | $0.00 | $0.00 |
| DISCOVER FINANCIAL SERVICES | U | $5,467.54 | $5,467.54 | $0.00 | $0.00 | $0.00 |
| ECAST SETTLEMENT CORPORAT | U | $7,215.25 | $7,215.25 | $0.00 | $0.00 | $0.00 |
| WACHOVIA BANK, N.A. | U | $538.36 | $572.45 | $0.00 | $0.00 | $0.00 |
| ECAST SETTLEMENT CORPORAT | U | $3,949.92 | $3,984.92 | $0.00 | $0.00 | $0.00 |
| ECAST SETTLEMENT CORPORAT | U | $4,358.48 | $4,358.48 | $0.00 | $0.00 | $0.00 |
| PORTFOLIO RECOVERY ASSOCIA | U | $0.00 | $325.05 | $0.00 | $0.00 | $0.00 |
| UNSECURED TOTALS: | | $24,804.30 | $25,448.91 | $0.00 | $0.00 | **$0.00** |

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**EXHIBIT DC 2-E**

In Re:
ALTHEA LORRAINE MILEY
1525 HIGH HAVEN CT NE
ATLANTA, GA  30329

Chapter 13
Case No.: A07-74375-JEM

SSN (1):  XXX-XX-4469

## TRUSTEE'S FINAL REPORT AND ACCOUNT

Nancy J. Whaley, Trustee for the above case, submits the following final report and account of the administration of the estate pursuant to 11 U.S.C. § 1302(b)(1). The Trustee declares under penalty of perjury as follows:

The case was filed on September 03, 2007.
The plan has not been confirmed.
The case was DISMISSED PRIOR TO CONFIRMATION on November 15, 2007.
Number of months from filing to last payment: No Payments Made
Number of months case was pending: 2
Dividend to unsecured creditors:  1.00%

---

**RECEIPTS**:
Total paid by or on behalf of the debtor(s):  $0.00

---

**EXPENSES OF ADMINISTRATION DISBURSED BY TRUSTEE**:

**ATTORNEY FEE**:

RALPH GOLDBERG, ATTY

Fees paid by debtor:  $726.00
Fees paid through plan:  $0.00
Total Attorney's Fees:  $726.00

**TRUSTEE FEE**:

Amount Paid:  $0.00

---

## DISBURSEMENTS TO CREDITORS:

### DEBTOR REFUND:

| CREDITOR NAME | CLASS | CLAIM SCHEDULED | CLAIM ASSERTED | PRINCIPAL PAID | INTEREST PAID | PRINCIPAL + INTEREST |
|---|---|---|---|---|---|---|
| ALTHEA LORRAINE MILEY | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| DEBTOR REFUND TOTALS: | | $0.00 | $0.00 | $0.00 | $0.00 | **$0.00** |

### SECURED TAXES:

| CREDITOR NAME | CLASS | CLAIM SCHEDULED | CLAIM ASSERTED | PRINCIPAL PAID | INTEREST PAID | PRINCIPAL + INTEREST |
|---|---|---|---|---|---|---|
| GEORGIA DEPARTMENT OF REVI | 1 | $1,033.12 | $1,295.73 | $0.00 | $0.00 | $0.00 |
| SECURED TAXES TOTALS: | | $1,033.12 | $1,295.73 | $0.00 | $0.00 | **$0.00** |

### PRIORITY TAXES:

| CREDITOR NAME | CLASS | CLAIM SCHEDULED | CLAIM ASSERTED | PRINCIPAL PAID | INTEREST PAID | PRINCIPAL + INTEREST |
|---|---|---|---|---|---|---|
| INTERNAL REVENUE SERVICE | 2 | $5,331.72 | $9,746.65 | $0.00 | $0.00 | $0.00 |
| PRIORITY TAXES TOTALS: | | $5,331.72 | $9,746.65 | $0.00 | $0.00 | **$0.00** |

### MORTGAGE ARREARS:

| CREDITOR NAME | CLASS | CLAIM SCHEDULED | CLAIM ASSERTED | PRINCIPAL PAID | INTEREST PAID | PRINCIPAL + INTEREST |
|---|---|---|---|---|---|---|
| UNITED GUARANTY RESIDENTIA | M | $27,000.00 | $12,723.75 | $0.00 | $0.00 | $0.00 |
| MORTGAGE ARREARS TOTALS: | | $27,000.00 | $12,723.75 | $0.00 | $0.00 | **$0.00** |

### UNSECURED:

| CREDITOR NAME | CLASS | CLAIM SCHEDULED | CLAIM ASSERTED | PRINCIPAL PAID | INTEREST PAID | PRINCIPAL + INTEREST |
|---|---|---|---|---|---|---|
| ECAST SETTLEMENT CORPORAT | U | $3,949.92 | $3,984.92 | $0.00 | $0.00 | $0.00 |
| AT&T SOUTHEAST | U | $378.23 | $469.78 | $0.00 | $0.00 | $0.00 |
| DISCOVER BANK | U | $5,467.54 | $5,467.54 | $0.00 | $0.00 | $0.00 |
| WACHOVIA BANK, N.A. | U | $538.36 | $610.60 | $0.00 | $0.00 | $0.00 |
| WELLS FARGO FINANCIAL GA., I | U | $3,274.75 | $3,780.76 | $0.00 | $0.00 | $0.00 |
| UNSECURED TOTALS: | | $13,608.80 | $14,313.60 | $0.00 | $0.00 | **$0.00** |



| Home | Who We Are | Subservicing | Career Opportunities | What's New | Mortgage Info |



Cenlar Names Joe G. Loots Vice President of Default Management

June 13, 2003, Ewing, NJ - Michael W. Young, President and Chairman of Cenlar FSB, one of the nation's leading subservicing firms, announced the appointment of Joe G. Loots to Vice President of Default Management. His responsibilities include supervision of all Cenlar's Default Management activity.

"Because of the extent of our mortgage servicing portfolio, default management is a key function at Cenlar," said Young. "With over 20 years of successful hands-on experience, Joe is an important addition to our management team. He will be an asset to our company and the customers we serve."

Loots was Director of Default Servicing for Household Mortgage Services before joining Cenlar, where he was responsible for the administration of a servicing portfolio of more than 300,000 mortgages. Earlier, he served as Vice President of Asset Management at Homecomings Financial. Prior to that, he held a similar position at Conseco Finance.

Loots attended Pierce College and Cal State Northridge, and has completed professional leadership and management seminars. He is a past member of the Alltel Default User's Steering Committee and the Fannie Mae User Advisory Committee.

Cenlar FSB is a wholesale bank specializing in mortgage subservicing, handling over 400,000 mortgages annually from all 50 states valued in excess of $30 billion. Cenlar delivers quality, professional service through its customized private label service to its client base, which includes thrifts, credit unions, and mortgage bankers.

More information on Cenlar FSB can be found on the company's website at www.cenlar.com. Cenlar's executive offices are located in Ewing, New Jersey.

Home I Who We Are I Subservicing I Career Opportunities I What's New I Mortgage Info

*Copyright 2000-2009, by Cenlar FSB. All Rights Reserved.*

**EXHIBIT D**

Thornburg Mortgage Home Loans, Inc.

1544 Old Alabama Road, Roswell, GA 30076

**Plaintiff's Name and Address**

**vs.**

Althea Miley "And All Others"

1526 High Haven Court

Atlanta, GA 30329

**Defendant's Name and Address**

**STATE COURT OF DEKALB COUNTY**
**GEORGIA, DEKALB COUNTY**

## DISPOSSESSORY WARRANT

**Plaintiff's Attorney and Bar Code**

Adam Silver (793542)

McCalla Raymer, LLC

1544 Old Alabama Road, Roswell, GA

404-417-3529/3379

Deposit Paid $ ___

Personally appeared the undersigned who upon oath says that he is (owner), (attorney at law), (agent), (attorney in fact) for the owner of said premises, and that Defendant is in possession as tenant of premises at the above address in DeKalb County.
**FURTHER:**

☐ That said tenant fails to pay rent now due thereon;
☐ That tenant is holding said house and premises over and beyond the term for which the same was rented or leased to him;
☑ That said tenant is a tenant at sufferance;  after foreclosure sale

The said owner desires and has demanded possession of said house and premises, and the same has been refused by the said defendant and affiant makes this affidavit that a warrant may issue for the removal of said defendant together with his property from said house and premises.

**PLAINTIFF PRAYS:**
(a) judgment for the past due rent in the amount of $_____ n/a _____ ;
(b) rent accruing up to the date of judgment or vacancy at the rate of $_____ n/a _____ per _____
(c) other _____ possession of premises

## SUMMONS

TO THE MARSHAL of the State Court of DeKalb County or his lawful deputies, GREETINGS:

The defendant herein is hereby commanded and required personally or by attorney to file with the Clerk of the State Court of DeKalb County in Room 101, DeKalb County Courthouse, 556 N. McDonough St., Decatur, Georgia within seven (7) days from the date of service of the within affidavit and summons (or on the first business day thereafter if the seventh day falls on Saturday, Sunday or legal holiday) then and there to answer said affidavit in writing or orally. If such answer is not made to said affidavit on or before the _____ day of _____ , 20 ___ , a writ of possession shall issue instanter as by law provided; and a judgment by default will be taken against you for all rents demanded in the complaint.

**Witness, the Honorable Judges of said court.**

Sworn to, subscribed and filed before me, this ____ day of _____ 20 ___

By: _____  Deputy Clerk
Notary Public

Affiant _____ Adam Silver (793542)

Phone No. _____ 404-417-3529/3379

## ENTRY OF SERVICE

I have served the foregoing affidavit and summons on the Defendant(s) by delivering a copy of the same:

☐ Personally
☐ Defendant not found in the jurisdiction of this Court
☐ To a person sui juris residing on the premises (Name) _____
  Age ____ Wt. ____ Ht. ____
☐ By posting a copy to the door of the premises and depositing a copy in the U.S. Mail, First Class in an envelope properly addressed with adequate postage thereon, said copy containing notice to the Defendant(s) to answer at the place stated in said summons.

DATE OF SERVICE _____ , 20 ___  _____ Deputy Marshal

dispo8-2-04

_____ MOTION TO STRIKE _____ JUDGMENT ON PLEADINGS _____ TRIAL

## IN THE STATE COURT OF DEKALB COUNTY
## STATE OF GEORGIA

# EXHIBIT DC 2-H

~~The company Mortgage Home Loans~~

~~also the Mortgage Payers~~

Civil Action No. _____

**Plaintiff(s)**

vs.

~~Althea Wiley,   and all others~~

~~3408 194th Harvey Court~~

~~Atlanta, Ga. 30089~~

**Defendant(s)**

### ORDER AND JUDGMENT

The above case having regularly come on before the Court without a jury, the Defendant having

[X]   appeared for trial          [ ]   failed to appear for trial

and the Court having heard and considered evidence, pleadings and testimony, finds that the Plaintiff is entitled to a WRIT OF

POSSESSION and judgment.

**ORDERED AND ADJUDGED that a WRIT OF POSSESSION be issued:**

(X)   On _____

( )   Upon Defendant's failure to pay Plaintiff $_____ on or before_____ and

_____ and all others

**FURTHER ORDERED that:**

( )   Plaintiff recover judgment against Defendant _____

in the amount of $_____(rent accruing to_____), plus court costs

and interest at the legal rate shall accrue hereafter.

( )   In the event that the Defendant files a Notice of Appeal, and at the time of filing the Notice of Appeal, the Defendant

shall pay into the registry of the Court $_____ as the sum found by the trial court to be due for rent.

In addition the Defendant shall pay $_____ beginning _____, 20_____ and by the

5th of each month thereafter. Upon default of any payment, a Writ of Possession Shall Issue Instanter.

### ALL PAYMENTS ARE TO BE IN CASH, CERTIFIED CHECK OR MONEY ORDER made payable to
### The State Court of DeKalb County.

The Court further finds:

_____

_____

This _____ day of _____, _____

PRESENTED BY: _____          _____ **Judge Gary Leshaw**

Attorney for Plaintiff                                Judge, State Court of DeKalb County
                                                    (By designation)

Consented to by: _____

                                **FILED IN THIS OFFICE THIS _____ DAY OF**

                                _____

dispojudg2007rev                **Deputy Clerk, State Court of DeKalb County**

**EXHIBIT DC 2-I**

## IN THE STATE COURT OF DEKALB COUNTY
## STATE OF GEORGIA

THORNBURG MORTGAGE HOME LOANS,   :
INC.,   :
  :   CIVIL ACTION
      PLAINTIFF,   :   FILE NO. 07D56191
  :
V.   :
  :
ALTHEA MILEY, AND ALL OTHERS,   :
  :
      DEFENDANT.   :
_____ :

## MOTION BY THORNBURG MORTGAGE HOME LOANS, INC. TO COMPEL PAYMENT OF RENT INTO THE COURT

THORNBURG MORTGAGE HOME LOANS, INC. ("Thornburg Mortgage Home Loans"),
Plaintiff, under the authority found in O.C.G.A. §§ 44-7-54, 44-7-55, and 44-7-56, requests that the
Court enter an Order requiring the Defendant to tender into the registry of the court monthly
rental payments for real property located at 1525 High Haven Court, Atlanta, Georgia ("the
property"), and to make such payments each month until the issue of possession of the property
is finally decided.

1.

Thornburg Mortgage Home Loans foreclosed on the property on September 4, 2007, and
was the successful bidder. A copy of Thornburg Mortgage Home Loans' Deed Under Power is
attached as Exhibit "A." Defendant is a tenant at sufferance following foreclosure.

2.

On December 27, 2007, the State Court of Dekalb County entered a Judgment and Writ of
Possession to Thornburg Mortgage Home Loans; Althea Miley filed a Notice of Appeal.

McCALLA
RAYMER, LLC
1544 Old Alabama Rd.
Roswell, GA 30076
(678) 281-6500
(770) 643-4088 (Fax)

1

3.

Since the issue of possession of the property  cannot be decided within two weeks of service of the Summons and Affidavit, Thornburg Mortgage Home Loans is entitled to monthly rent consistent with the rental value of the Property.

4.

When the property was foreclosed, the regular monthly mortgage payment was $1,083.46. Accordingly, Thornburg Mortgage Home Loans seeks monthly rental payments equal to the amount of the former mortgage payment, or in an amount determined by the court after hearing testimony from a witness qualified to estimate the fair rental value of properties, whichever amount is greater.

WHEREFORE, THORNBURG MORTGAGE HOME LOANS, INC. requests that the Court,

(a)   Order that Defendant tender into the registry of the Court monthly rental payments for September, 2007 through January, 2008, the full amount to be not less than $5,417.30; and,

(b)   Order that beginning February 1, 2008, Defendant pay monthly rent into the registry of the court in the amount ordered, and continue to make such payments on the first day of each month thereafter until the issue of possession is finally decided; and,

(c)   Order that upon failure of the Defendant to timely make any payment as ordered, Thornburg Mortgage Home Loans shall be issued a Writ of Possession, effective INSTANTER; and,

McCALLA
RAYMER, LLC
1544 Old Alabama Rd.
Roswell, GA  30076
(678) 281-6500
(770) 643-6088 (Fax)

2

(d)     Grant such other and further relief as this Court deems appropriate.

Respectfully submitted this ___ day of January, 2008.

_____
Robert Michael Sheffield
Georgia Bar No. 639814
Attorney for Thornburg Mortgage Home Loans, Inc.

McCALLA
RAYMER, LLC
1544 Old Alabama Rd.
Roswell, GA 30076
(678) 281-6500
(770) 643-4088 (Fax)

3

**CERTIFICATE OF SERVICE**

This is to certify that on this date the undersigned served a copy of the within and foregoing MOTION BY THORNBURG MORTGAGE HOME LOANS, INC. TO COMPEL PAYMENT OF RENT INTO THE CCURT, by depositing a true and accurate copy of the same in the United States Mail in an envelope with adequate postage affixed, addressed as follows:

Althea Miley, and all others
1525 High Haven Court
Atlanta, Georgia 30329

This _25_ day of January, 2008.

_____
Robert Michael Sheffield
Georgia Bar No. 639814
Attorney for Thornburg Mortgage Home Loans, Inc.

McCALLA
RAYMER, LLC
1544 Old Alabama Rd.
Roswell, GA 30076
(678) 281-6500
(770) 643-4088 (Fax)

Deed Book 20347 Ps   75
Filed and Recorded Oct-04-2007 09:30am
    2007-0176626
Real Estate Transfer Tax $0.00
    Linda Carter
    Clerk of Superior Court
    DeKalb County, Georgia

Return To:

MR Default Services, LLC
1544 Old Alabama Road
Roswell, GA 30076

STATE OF
COUNTY OF

CROSS INDEX TO DEED
BOOK 13763, PAGE 510,
DEKALB COUNTY,
GEORGIA RECORDS

## DEED UNDER POWER

THIS INDENTURE, made this 4th day of September, 2007, by Althea Miley (hereinafter collectively referred to as "Borrower"), acting through this duly appointed attorney in fact, Thornburg Mortgage Home Loans, Inc. (hereinafter referred to as "Lender"), as Party of the First Part, and Thornburg Mortgage Home Loans, Inc., as Party of the Second Part:

## WITNESSETH:

WHEREAS, Borrower executed and delivered that certain Security Deed given by Althea Miley to Mortgage Electronic Registration Systems, Inc., dated September 30, 2002, recorded in Deed Book 13763, Page 510, DeKalb County, Georgia Records, as last transferred to Thornburg Mortgage Home Loans, Inc. by assignment recorded in Deed Book 20347*, Page 74 * DeKalb County, Georgia Records, conveying the after-described property to secure a Note in the original principal amount of TWO HUNDRED TWENTY-SIX THOUSAND TWO HUNDRED AND 0/100 DOLLARS ($226,200.00);
*BY ASSIGNMENT RECORDED SIMULTANEOUSLY HEREWITH AND MADE A PART HEREOF BY REFERENCE

WHEREAS, default in the payment of the required installments under said Note occurred, and by reason of said default, Lender elected, pursuant to the terms of the Security Deed and Note, and declared the entire principal and interest immediately due and payable; and

WHEREAS, said entire indebtedness still being in default, Lender on behalf of Borrower, and according to the terms of said Security Deed, did advertise said property for sale once a week for 4 weeks immediately preceding said sale in a newspaper in DeKalb County, Georgia, wherein the Sheriff carried his advertisements, namely The Champion Newspaper; and

Loan # 0012352381                    Page 1      McCalla Raymer, LLC 52044606-FT1/ar2
                                                 09/04/07



WHEREAS, notice was given in compliance with Georgia Laws 1981, Volume I, Page 834, codified as O.C.G.A. Section 44-14-162.2 and Section 44-14-162.4. The notice so required was rendered by mailing a copy of the Notice of Sale submitted to the publisher to the "Debtor" (as that term is defined in O.C.G.A. Section 44-14-162.1) at least fifteen days prior to the foreclosure sale date on September 4, 2007; and

WHEREAS, Lender did expose said property for sale to the highest bidder for cash on the first Tuesday in September, 2007 within the legal hours of sale at the usual place for conducting Sheriff's sales in DeKalb County before the Courthouse door, and offered said property for sale at public outcry to the highest bidder for cash when and where the aforesaid Party of the Second Part bid TWO HUNDRED SIXTY-ONE THOUSAND EIGHT HUNDRED SEVENTY-NINE AND 50/100 DOLLARS ($261,879.50); AND

WHEREAS, the said property was knocked off to the Party of the Second Part for the aforementioned sum of money in cash.

NOW THEREFORE, in consideration of the premises and said sum of money and by virtue of and in the exercise of the power of sale contained in the Security Deed, the Party of the First Part has bargained, sold, granted and conveyed, and by these presents does hereby bargain, sell, grant and convey to the Party of the Second Part, said party's representatives, heirs, successors and assigns, the following described property:

> All that tract or parcel of land lying and being in Land Lot 151, 18th District, DeKalb County, Georgia, being Lot 3, Block A, High Haven Subdivision, according to plat recorded at Plat Book 39, page 58, DeKalb County Records, which plat is hereby referred to and made a part of this description, being known as 1525 High Haven Court, according to the present system of numbering houses in DeKalb County, Georgia.

TOGETHER WITH all and singular the rights, members and appurtenances thereto appertaining; also all the estate, right, title, interest, claim or demand of the Party of the First Part, or said Party's representatives, heirs, successors and assigns, legal, equitable or otherwise, whatsoever, in and to the same.

THIS CONVEYANCE IS SUBJECT TO any outstanding ad valorem taxes (including taxes which are a lien, but not yet due and payable), any matters which might be disclosed by an accurate survey and inspection of the property, any assessments, liens, encumbrances, zoning ordinances, restrictions, covenants, and matters of record superior to the Security Deed.

TO HAVE AND TO HOLD the said property and every part thereof unto the said Party of the Second Part, and said party's representatives, heirs, successors and assigns, to said Party's own proper use, benefit and behoof in FEE SIMPLE, in as full and ample a manner as the said Party of the First Part or said Party's representatives, heirs, successors and assigns, did hold and enjoy the same.

Loan # 0012352381                    Page 2      McCalla Raymer, LLC 52044606-FT1/ar2
                                                 09/04/07



IN WITNESS WHEREOF, Lender as Agent and Attorney in Fact for Borrower has hereunto affixed Lender's hand and seal as of the day and year first above written.

Thornburg Mortgage Home Loans, Inc.

as Attorney in Fact for

Althea Miley

By: _____ JOE LOOTS

Title: ___ VP OF DEFAULT

By: _____ DONNA J. LYNCH

Title: _ 2ND VP

(CORPORATE SEAL)

Signed, sealed and delivered in the presence of:

_____ KRISTINE CONNOLLY _____
Witness

_____ ORIANN DELANY _____
Notary Public

My Commission Expires:   9/02/09

ORIANN DELANY
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires September 2, 2009
(Notary Seal)

Deed Book 20347 Pg 77
Linda Carter
Clerk of Superior Court
Dekalb County, Georgia

Loan # 0012352381                    Page 3           McCalla Raymer, LLC 52044606-
                                                      FT10/clp2
                                                      04/03/07

**EXHIBIT DC 2-J**

# Court of Appeals
# of the State of Georgia

ATLANTA,

MAR 1 1 2008

*The Court of Appeals hereby passes the following order:*

## A08D0250. ALTHEA MILEY ET AL. v. THORNBURG MORTGAGE HOME LOANS, INC.

On December 27, 2007, the superior court in this case issued a writ of possession to Thornburg Mortgage Home Loan, Inc. Althea Miley filed her notice of appeal from this order on December 28, 2007. The appeal has been docketed in this Court as Appeal No. A08A1034. Thornburg Mortgage Home Loan, Inc. then filed a motion to compel payment of rent into the court, which the superior court granted on December 28, 2007. Miley then filed this timely application for discretionary appeal from that order.

Appeals from cases involving dispossessory warrants in which the only issue to be resolved is the amount of rent due and such amount is $2,500.00 or less must be brought by application for discretionary review, and not by direct appeal. OCGA § 5-6-35 (a)(3). This Code section, however, is inapplicable to this case. Thus, Miley was not required to file an application for discretionary review. This application is therefore GRANTED pursuant to OCGA § 5-6-35 (j). Miley shall have ten days from the date of this order to file a notice of appeal. The clerk of the superior court is directed to include a copy of this order in the record transmitted to the Court of Appeals.

07D56191



*Court of Appeals of the State of Georgia*
*Clerk's Office, Atlanta* MAR 1 1 2008
*I certify that the above is a true extract from the minutes of the Court of Appeals of Georgia.*

*Witness my signature and the seal of said court hereto affixed the day and year last above written.*

*Willi. L. M̲a̲t̲*

*, Clerk.*

STATE AND MAGISTRATE COURTS OF DEKALB COUNTY

**BETTY SANDERS, CLERK**

DEKALB COUNTY COURTHOUSE

DECATUR, GEORGIA

Telephone 404-371-2261

**EXHIBIT DC 2-K**

*DZMR*
*D335*
*DXPY*

Date _3-20-09_

_Thornburg Mortgage Home Loans Inc._
Plaintiff

vs.

Action Number _07D056A1_

_Althea Miley and all others_
Defendant

( )   Need Order for: _____

( )   Contact Plaintiff/Plaintiff's Attorney: _____

( )   Contact Defendant/Defendant's Attorney: _____

( )   Case checked to inactive per Judge _____, on _____

( )   Approve for Writ of Possession: ____Yes ____No, per Judge _____

( )   Approve for Paupers Affidavit: ____Yes ____No, per Judge _____

( )   Have Attorney _____ prepare Order.

( )   Dismissal to be filed on _____

( )   Notice of Bankruptcy filed on _____

( )   Case taken under advisement on _____

( )   Case checked by consent of both parties on _____

( )   Case reset to _____

( )   Other: _____

_____        _____        _M Cheek_
Date                     Sitting Judge            Deputy Clerk

STATE COURT OF DEKALB COUNTY, GA
2009 MAR 20 AM 10:37
FILED

**Judge's Directive**

_This does not stop the writ_
_GC   3/20/09_
_A lot of it Appeal,_
_Superior ct or Dismissed for want of..._

correct

**EXHIBIT DC 2-L**

# Thornburg | Mortgage

March 18, 2003

#BWNHNTZ
Althea Miley
1525 High Haven Court
Atlanta GA 30329

NOTICE OF CHANGE IN INTEREST RATE AND MONTHLY INTEREST ONLY PAYMENT ON
          YOUR ADJUSTABLE RATE MORTGAGE

RE: Loan Number: 0012352381     Index: 6 MONTH LIBOR FIRST BUSINESS DAY OF MONTH

This notice is to inform you of an interest rate change and/or an adjustment
to your interest payment as authorized by your documents.  These changes
are effective with the payment due 05-01-03.  The interest rate and payment
of your mortgage loan are subject to change every  6 payments.

LOAN INFORMATION                         INDEX INFORMATION

Interest Adjustment Date: 04-01-03   New Index Value:      1.34000%
Original Interest Rate:  3.87500%    Old Index Value:      0.00000%
Old Interest Rate:       3.87500%    Margin Added to Index:  2.12500
New Interest Rate:       3.50000%    Caps per Change:      1.00000
Old Interest Payment: $       730.44

TOTAL NEW Interest Payment: $        659.75
TOTAL New Payment:          $        659.75

Beginning with the payment due:  05-01-03
Index Publication Date:          03-03-03

Unpaid Principal Balance: $ 226,200.00
Remaining Term in Months:   354

Escrow deposits and other items in your total payment will continue but are
subject to change based on an annual escrow analysis.

A review of your loan documents should clarify the items addressed above.

Please do not hesitate to contact us if you need additional information
or clarification.  We look forward to an opportunity to assist you in the
future.

Special Products Department
AR210 024 CPI PS

For Customer Service Inquiries call (877) 270-9295
http://www.thornburgmortgage.com



1# workplan
# fee

5891.00-

*Léann*

609-883-3900   mcls
# similar LOSS Mitigation   770-643-7200
Reinstatement

September 19, 2006

#BWNHNTZ
Althea Miley
1525 High Haven Court
Atlanta GA 30329

RE: Loan Number: 0012352381
Property Address: 1525 High Haven Court
Atlanta GA 30329

Dear Borrower(s):

Please contact this office as soon as possible upon receipt of this letter
to discuss your loan delinquency.  Time is of the essence in this
critical matter.

Please contact this office at the telephone number listed.

Sincerely,

Loan Servicing Department
XC163 027 CPI PS

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.

£945.55

5891.00
4
18
18
9
8
16
10

Thornburg Mortgage Home Loans, Inc.
425 Phillips Boulevard
Ewing, New Jersey 08618
877.270.9295 Toll-Free
www.thornburgmortgage.com



EQUAL HOUSING LENDER
C600678  03526THLTYH1

**EXHIBIT DC 2-M**

PT-61 (Rev. 11/04)  To be filed in **DEKALB COUNTY**  PT-61 044-2009-018597

| SECTION A – SELLER'S INFORMATION (Do not use agent's information) | | SECTION C – TAX COMPUTATION | |
|---|---|---|---|
| SELLER'S BUSINESS / ORGANIZATION / OTHER NAME <br> THORNBURG MORTGAGE HOME LOANS, INC. | | Exempt Code <br> If no exempt code enter NONE | NONE |
| MAILING ADDRESS (STREET & NUMBER) <br> 2691 S. DECKER LAKE LANE | | 1. Actual Value of consideration received by seller <br> Complete Line 1A if actual value unknown | $223,600.00 |
| CITY, STATE / PROVINCE / REGION, ZIP CODE, COUNTRY <br> WEST VALLEY CITY, UT 84119 USA | DATE OF SALE <br> 7/31/2009 | 1A. Estimated fair market value of Real and <br> Personal property | $0.00 |
| SECTION B – BUYER'S INFORMATION (Do not use agent's information) | | 2. Fair market value of Personal Property only | $0.00 |
| BUYER'S LAST NAME <br> BURNS | FIRST NAME    MIDDLE <br> ERIN | 3. Amount of liens and encumbrances <br> not removed by transfer | $0.00 |
| MAILING ADDRESS (Must use buyer's address for tax billing & notice purposes) <br> 1525 HIGH HAVEN COURT NE | | 4. Net Taxable Value <br> (Line 1 or 1A less Lines 2 and 3) | $223,600.00 |
| CITY, STATE / PROVINCE / REGION, ZIP CODE, COUNTRY <br> ATLANTA, GA 30329 USA | Check Buyers Intended Use <br> (X) Residential  ( ) Commercial <br> ( ) Agricultural  ( ) Industrial | 5. TAX DUE at .10 per $100 or fraction thereof <br> (Minimum $1.00) | $223.60 |

| SECTION D – PROPERTY INFORMATION (Location of Property (Street, Route, Hwy, etc)) | | | | | |
|---|---|---|---|---|---|
| HOUSE NUMBER & EXTENSION (ex 265A) <br> 1525 | PRE-DIRECTION, STREET NAME AND TYPE, POST DIRECTION <br> HIGH HAVEN Court NE | | | | SUITE NUMBER |
| COUNTY <br> DEKALB | CITY (IF APPLICABLE) | | MAP & PARCEL NUMBER <br> 18 151 01 072 | | ACCOUNT NUMBER |
| TAX DISTRICT | GMD | LAND DISTRICT <br> 18 | ACRES | LAND LOT <br> 151 | SUB LOT & BLOCK <br> LOT 3 |

| SECTION E – RECORDING INFORMATION (Official Use Only) | | | | |
|---|---|---|---|---|
| DATE | DEED BOOK <br> 21587 | DEED PAGE <br> 80 | PLAT BOOK | PLAT PAGE |

ADDITIONAL BUYERS
None

**EXHIBIT DC 2-1**



2015058534   DEED BOOK **24896** Pg **275**

Filed and Recorded:
4/22/2015 3:18:30 PM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

When Recorded Return To:
ERIN R BURNS
1525 HIGH HAVEN CT NE
ATLANTA, GA 30329-3203

Loan #: 1746122930

## CANCELLATION OF DEED TO SECURE DEBT
(Cancellation of Security Deed)

STATE OF GEORGIA
COUNTY OF DEKALB

The indebtedness referred to in that certain Deed to Secure Debt from ERIN R. BURNS to JPMORGAN CHASE BANK, N.A. dated 07/31/2009, and recorded in Deed Book **21587, Page 86** in the office of the Clerk of Superior Court of **DEKALB** County, **Georgia**, having been paid in full and the undersigned being the present owner of such secured interest by virtue of being the original grantee or the heir, assign, transferee, or devisee of the original grantee, the clerk of such superior court is authorized and directed to cancel that deed of record as provided in Code Section 44-14-4 of the O.C.G.A. for other Mortgage cancellations.
Property is commonly known as: 1525 HIGH HAVEN COURT NE, ATLANTA, GA 30329.

Dated on _04 / 15 / 15_ (MM/DD/YYYY)
JPMORGAN CHASE BANK, N.A.

By:

Ingrid Whitty   VICE PRESIDENT

Signed and delivered on the date above shown.

_____        _____
Shannon Siggers Witness                Ednique Williams Witness

STATE OF LOUISIANA    PARISH OF OUACHITA
On _04 / 15 / 15_ (MM/DD/YYYY), before me appeared Ingrid Whitty, to me personally known, who did say that he/she/they is/are the VICE PRESIDENT of JPMORGAN CHASE BANK, N.A. and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_____
Ira D. Brown #16206
Notary Public - State of LOUISIANA
Commission expires: LIFETIME

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
CHAS6 26081978 _2 PRIME   T1315044009  [C-1] RCNGA5

*D0009977925*

**EXHIBIT DC 2-O**



Browser Requirements    Privacy Statement

Keep  DeKalb  Beautiful

**Property Apprais**

pop up description layer

120 West Trinity Place
Room 208
Decatur. GA 30030
Phone: 404-371-0841
Directions

## Property Appraisal Department

Property Overview

Back    Print

## Parcel ID: 18 151 01 072

### Owner Information

| | | | |
|---|---|---|---|
| Tax District | 04 - Unincorporated | Zoning | R100 - Sf Res Dist |
| Owner | Thornburg Mortgage Home Loans | Land Use | HHSL |
| Co-Owner | | Land Unit | 1 |
| Owner Address | 000425 Phillips Blvd Ewing, NJ 08618 | Legal Description | |
| Property Address | 1525 High Haven Ct UNI | | |

### Appeal Status

Date Notice Mailed:  No Notice Mailed for 2009. Click here for more information
Appeal Code:       -
Hearing Date
Hearing Time:

### Building Characteristics

| | | | | |
|---|---|---|---|---|
| Year Built | 1964 | Heated Space | 2,567 | |
| Condition Code | A - Average | Basement Area | 0 Sq. Ft. | |
| Quality Grade | 020 - Average + | % Bsmt Finished | 0 % | |
| Air Conditioning | Y | Bedrooms | 3 | |
| Fireplace | 1 | Bathrooms | Full | Halt |
| Stories | 1 | | 2 | 0 |
| Square Footage | 2,567 | | | |

### Current Appraised & Assessment Value

| Tax Year | Land Value | Bldg Value | Misc Imp | Total Appraised | Assessment@40 |
|---|---|---|---|---|---|
| 2009 | $46,000 | $226,300 | $0 | $272,300 | $108,920 |

PT-61 (Rev. 11/04)

## To be filed in **DEKALB COUNTY**

**PT-61 044-2017-013389**

| SECTION A – SELLER'S INFORMATION (Do not use agent's information) | SECTION C – TAX COMPUTATION | |
|---|---|---|
| **SELLER'S BUSINESS / ORGANIZATION / OTHER NAME**<br>Erin R. Burns and Jeanne Michael Burns | **Exempt Code**<br>If no exempt code enter NONE | **NONE** |
| **MAILING ADDRESS (STREET & NUMBER)**<br>1653 Oak Grove Road | **1. Actual Value of consideration received by seller**<br>Complete Line 1A if actual value unknown | **$470,000.00** |
| **CITY, STATE / PROVINCE / REGION, ZIP CODE, COUNTRY**<br>Decatur, GA 30033 USA    **DATE OF SALE**<br>6/15/2017 | **1A. Estimated fair market value of Real and**<br>Personal property | **$0.00** |
| **SECTION B – BUYER'S INFORMATION (Do not use agent's information)** | **2. Fair market value of Personal Property only** | **$0.00** |
| **BUYER'S LAST NAME**    **FIRST NAME**    **MIDDLE**<br>~~Dekar~~    ~~Matthew~~    P | **3. Amount of liens and encumbrances**<br>not removed by transfer | **$0.00** |
| **MAILING ADDRESS (Must use buyer's address for tax billing & notice purposes)**<br>1525 High Haven Court NE | **4. Net Taxable Value**<br>(Line 1 or 1A less Lines 2 and 3) | **$470,000.00** |
| **CITY, STATE / PROVINCE / REGION, ZIP CODE, COUNTRY**<br>Atlanta, GA 30329 USA    **Check Buyers Intended Use**<br>( ) Residential ( ) Commercial<br>( ) Agricultural ( ) Industrial | **5. TAX DUE at .10 per $100 or fraction thereof**<br>(Minimum $1.00) | **$470.00** |

| SECTION D – PROPERTY INFORMATION (Location of Property (Street, Route, Hwy, etc)) | | | | |
|---|---|---|---|---|
| **HOUSE NUMBER & EXTENSION (ex 265A)**<br>1525 | **PRE-DIRECTION, STREET NAME AND TYPE, POST DIRECTION**<br>High Haven Court NE | | | **SUITE NUMBER** |
| **COUNTY**<br>DEKALB | **CITY (IF APPLICABLE)** | **MAP & PARCEL NUMBER**<br>18-151-01-072 | | **ACCOUNT NUMBER** |
| **TAX DISTRICT** | **GMD** | . | **LAND DISTRICT**    **ACRES** | **LAND LOT** | **SUB LOT & BLOCK** |

| SECTION E – RECORDING INFORMATION (Official Use Only) | | | | |
|---|---|---|---|---|
| **DATE** | **DEED BOOK**<br>26362 | **DEED PAGE**<br>539 | **PLAT BOOK** | **PLAT PAGE** |

**ADDITIONAL BUYERS**
Dekar, Melissa D

**2017106593**   DEED BOOK **26362** Pg **539**

Real Estate Transfer Tax $470.00

Filed and Recorded:
7/10/2017 10:38:32 AM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

**Record and Return to:**
Weissman PC
One Alliance Center, 3500 Lenox Road, 4th Floor
Atlanta, GA  30326

**File No.: NF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-E**

## LIMITED WARRANTY DEED

**STATE OF GEORGIA**
**COUNTY OF FULTON**

THIS INDENTURE, made this 15th day of June, 2017 by and between **Erin R. Burns and Jeanne Michael Burns**, as party or parties of the first part, hereinafter called Grantor, and ~~Matthew~~ ~~and~~ ~~Matthew~~, as JOINT TENANTS WITH RIGHTS OF SURVIVORSHIP and not as tenants in common, as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

WITNESSETH that:  Grantor, for and in consideration of the sum of TEN DOLLARS AND NO/100 ($10.00) AND OTHER VALUABLE CONSIDERATIONS in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee, the following described property, to-wit:

**SEE ATTACHED EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF BY REFERENCE HERETO**

THIS CONVEYANCE is made subject to all zoning ordinances, easements and restrictions of record affecting said described property.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, only to the proper use, benefit and behoof of the said Grantee, as joint tenants and not as tenants in common, for and during their joint lives, and upon the death of either of them, then to the survivor of them in FEE SIMPLE together with every contingent remainder and right of reversion, and to the heirs and assigns of said survivor.

AND THE SAID Grantor will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons claiming by, through, or under Grantor herein.

THIS CONVEYANCE is made pursuant to Official Code of Georgia Section 44-6-190, and is the intention of the parties hereto to hereby create in Grantee a joint tenancy estate with right of survivorship and not as tenants in common.

Deed (Limited Warranty)

NF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-E

DEED BOOK 26362 Pg 540

IN WITNESS WHEREOF, the Grantor has signed and sealed this Deed, on the date and year above written.

Signed, sealed and delivered
in the presence of:

_____                          _____ (Seal)
Unofficial Witness                                  Erin R. Burns

_____
Notary Public

My Commission Expires: _____ FEB
                                 7
                                2020

Signed, sealed and delivered
in the presence of:

_____                          _____ (Seal)
Unofficial Witness                                  Jeanne Michael Burns

_____
Notary Public

My Commission Expires: _____

                        FEB
                         7
                        2020

Deed (Limited Warranty)                                          NF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-E

DEED BOOK 26362 Ps 541
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

## EXHIBIT "A"

**File No.: NF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-E**

All that tract or parcel of land lying and being in Land Lot 151 of the 18th District, DeKalb County, Georgia, being Lot 3, Block A, High Haven Subdivision, as per plat recorded in Plat Book 39, Page 58, as revised in Plat Book 39, Page 73, DeKalb County, Georgia Records, which recorded plat is incorporated herein by this reference and made a part of this description. Said property being known as 1525 High Haven Court according to the present system of numbering property in DeKalb County, Georgia.

The above described property is the same property conveyed to Erin R. Burns and Jeanne Michael Burns in Quitclaim Deed recorded in Deed Book 21589, Page 102, aforesaid records; the legal description on said deed omitted Revised Plat Book 39, Page 73.

Deed (Limited Warranty)

NF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-E

**2017106595**    DEED BOOK **26362** Pg **542**

Filed and Recorded:
**7/19/2017 10:38:32 AM**
Georgia Intangible Tax Paid $780.00
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

**Weissman**
**3500 Lenox Road, 4th Floor**
**Atlanta, GA 30326**

NFID6-17-00067-E

Return To: Wells Fargo Bank, N.A.
FINAL DOCS N0012-01B
6200 PARK AVE
DES MOINES, IA 50321

Prepared By: Elizabeth J Chapman
2801 4TH AVE S
2ND FLOOR
MINNEAPOLIS, MN 55408-2436

## Security Deed

**Definitions.** Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) *"Security Instrument"* means this document, which is dated June 15, 2017, together with all Riders to this document.

(B) *"Borrower"* is ~~Matthew D Kokes and Melaney E Kokes~~. Borrower is the grantor under this Security Instrument.

(C) *"Lender"* is Wells Fargo Bank, N.A.. Lender is a corporation organized and existing under the laws of United States of America. Lender's address is 101 North Phillips Avenue, Sioux Falls, SD 57104. Lender is the grantee under this Security Instrument.

(D) *"Note"* means the promissory note signed by Borrower and dated June 15, 2017. The Note states that Borrower owes Lender two hundred sixty thousand and 00/100 Dollars (U.S. $ 260,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than July 1, 2047.

(E) *"Property"* means the property that is described below under the heading "Transfer of Rights in the Property."

(F) *"Loan"* means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) *"Riders"* means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider

☐ Balloon Rider    ☐ Planned Unit Development Rider    ☐ 1-4 Family Rider

☐ VA Rider    ☐ Biweekly Payment Rider    ☒ Other(s) [specify]

                                           Waiver of Borrower's Rights

HCFG-00359
GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services     2017061415.3.2.3509-J20161220Y

861664617215
Form 3011 1/01
04/16
Page 1 of 13